### IN THE UNITED STATES DISTRICT COURT
### FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| FABIAN SANTIAGO, Inmate #B79716, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) |
| SGT. CHILDERS, C/O SMITHSON, C/O ANDERSON, C/O STARKEY, C/O BERNARD, LT. DALLAS, LT. SIEPP, UNKNOWN PARTIES, WEISLEY WILES, COUNSELOR McNABB, GRIEVANCE OFFICER THENNY, WARDEN MOTE, SHERRY HILE, and DIRECTOR WALKER, | ) ) ) ) ) ) ) ) ) |
| | ) |
| Defendants. | ) |

CIVIL NO. 05-512-MJR

## MEMORANDUM AND ORDER

**REAGAN, District Judge:**

Plaintiff, a former inmate in the Menard and Pontiac Correctional Centers, brings this action for deprivations of his constitutional rights pursuant to 42 U.S.C. § 1983. This case is now before the Court for a preliminary review of the complaint pursuant to 28 U.S.C. § 1915A, which provides:

> (a) **Screening.**– The court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.
> (b) **Grounds for Dismissal.**– On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint–
>   (1) is frivolous, malicious, or fails to state a claim on which relief may be granted; or
>   (2) seeks monetary relief from a defendant who is immune from such relief.

28 U.S.C. § 1915A.  An action or claim is frivolous if "it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Upon careful review of the complaint and any

supporting exhibits, the Court finds it appropriate to exercise its authority under § 1915A; portions of this action are subject to summary dismissal for failure to state a claim.

To facilitate the orderly management of future proceedings in this case, and in accordance with the objectives of Federal Rules of Civil Procedure 8(f) and 10(b), the Court finds it appropriate to break the claims in Plaintiff's *pro se* complaint and other pleadings into numbered counts, as shown below. The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. The designation of these counts does not constitute an opinion as to their merit.

> **COUNT 1:** Against Defendants Mitchell, Childers, and unnamed correctional officers for unconstitutional use of excessive force.
>
> **COUNT 2:** Against unspecified defendants for deliberate indifference to Plaintiff's medical needs.
>
> **COUNT 3:** Against Defendants Smithson, Anderson, and Starkey, for unconstitutional use of excessive force.
>
> **COUNT 4:** Against Defendant Dallas for violations of due process.
>
> **COUNT 5:** Against Defendant Anderson for imposing cruel and unusual conditions of confinement.
>
> **COUNT 6:** Against Defendants Mathews and Smithson for illegal search of his cell and for verbal harassment.
>
> **COUNT 7:** Against Defendants McNabb, Mote, Hile, and Walker for failing to properly respond to his grievances.
>
> **COUNT 8:** Against Defendants Childers, Smithson, Anderson, Starkey, Bernard, Dallas, Siepp, John Does 1 and 2, Mote, Hile, Walker, Wiles, McNabb, and Thenny for unconstitutional retaliation.

### COUNT 1

On July 18, 2003, Plaintiff was housed in segregation at Menard Correctional Center.

Defendant Mitchell informed him that he would be released that day and would be moved to a cell in general population with an inmate named "Bowleg." Plaintiff told Defendant Mitchell that if he was put in a cell with Bowleg, they would fight, and he asked Defendant Mitchell to place him in another cell with a different inmate. Defendant Mitchell became enraged and began yelling at Plaintiff, using racial epithets. Plaintiff asked to speak to a Lieutenant. A short time later, Defendant Mitchell returned with Sergeant Childers. Plaintiff asked Defendant Childers to place inmate "Bowleg" on Plaintiff's separation list. Defendant Childers responded by stating, "I know who you are, you[r'e] that trouble maker who use[d] to be in the East House," and calling Plaintiff names and using racial slurs. Defendant Childers then entered Plaintiff's cell and began "brutally" assaulting Plaintiff, striking him with his fists in the head and upper body. Plaintiff fell to the floor, and Defendant Childers began kicking Plaintiff in the head and stomach, causing the back of Plaintiff's head to strike the toilet and causing numerous cuts and bruises to Plaintiff's head and face. Defendant Mitchell handcuffed Plaintiff and took him to the segregation visitors bathroom where Defendant Childers continued to strike Plaintiff with his fists. Six to eight additional corrections officers were present during the assault, but none made any move to stop Defendant Childers from attacking Plaintiff.

  Defendant Mitchell ordered Plaintiff to clean the blood off of his head and face, but Plaintiff refused, stating that he would not help cover up the improper actions. Plaintiff demanded medical attention. Plaintiff states that he began to look around at the unnamed officers, but each of them intentionally covered their name badge so that Plaintiff would be unable to identify them. One of these guards escorted Plaintiff to the cellhouse medical technician. Upon seeing Plaintiff's injuries, the medical technician directed the unnamed guard to take Plaintiff to the health care unit because

his injuries were too serious for the medical technician to attend to.

The intentional use of excessive force by prison guards against an inmate without penological justification constitutes cruel and unusual punishment in violation of the Eighth Amendment and is actionable under Section 1983. *Hudson v. McMillian*, 503 U.S. 1, 6-7 (1992); *DeWalt v. Carter*, 224 F.3d 607, 619 (7th Cir. 2000). "[W]henever prison officials stand accused of using excessive physical force in violation of the Cruel and Unusual Punishments Clause, the core judicial inquiry is . . . whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson*, 503 U.S. at 6-7. An inmate seeking damages for the use of excessive force need not establish serious bodily injury to make a claim, but not "every malevolent touch by a prison guard gives rise to a federal cause of action. . . . [the] prohibition of 'cruel and unusual' punishment necessarily excludes from constitutional recognition de minimis uses of physical force, provided that the use of force is not of a sort 'repugnant to the conscience of mankind.'" *Id.* at 9-10; *see also Outlaw v. Newkirk*, 259 F.3d 833, 837-38 (7th Cir. 2001). Based on these standards, Plaintiff's excessive force claim against Defendant Childers cannot be dismissed at this point in the litigation.

Plaintiff also asserts that Defendant Mitchell and some unnamed corrections officers stood by and watched Defendant Childers assault Plaintiff, and that these defendants are liable for Plaintiff's injuries due to their failure to intervene. The Seventh Circuit has examined this issue as it pertains to police officers who fail to intervene when a fellow officer exceeds his authority, and they stated:

> We believe it is clear that one who is given the badge of authority of a police officer may not ignore the duty imposed by his office and fail to stop other officers who summarily punish a third person in his presence or otherwise within his knowledge. That responsibility

> obviously obtains when the nonfeasor is a supervisory officer to whose direction misfeasor officers are committed. So, too, the same responsibility must exist as to nonsupervisory officers who are present at the scene of such summary punishment, for to hold otherwise would be to insulate nonsupervisory officers from liability for reasonably foreseeable consequences of the neglect of their duty to enforce the laws and preserve the peace.

*Byrd v. Brishke*, 466 F.2d 6, 11 (7th Cir. 1972); *see also Lanigan v. Village of East Hazel Crest*, 110 F.3d 467, 477 (7th Cir. 1997); *Yang v. Hardin*, 37 F.3d 282, 285 (7th Cir. 1994) (collected cases); *Archie v. City of Racine*, 826 F,2d 480, 491 (7th Cir. 1987). Based on these legal standards, Plaintiff may proceed against Defendant Mitchell on the failure-to-intervene claim.

While it is within the Court's discretion to allow Plaintiff to proceed against unknown defendants, the use of fictitious names is generally frowned upon. *See K.F.P. v. Dane County*, 110 F.3d 516, 519 (7th Cir. 1997). However, where a Plaintiff alleges objectively serious constitutional deprivations, he or she should be allowed "a reasonable opportunity to identify unnamed defendants and amend his complaint." *See Sanders v. Sheahan*, 198 F.3d 626, 629 (7th Cir. 1999). The Court finds that Plaintiff's complaint alleges serious constitutional violations and will allow Plaintiff to proceed against the unnamed defendants, but Plaintiff must attempt to name these individuals in a properly-filed amended complaint.[1] In summary, Plaintiff may proceed against Defendants Childers, Mitchell and the unnamed correctional officers in Count 1 of the complaint.

## COUNT 2

---

[1] Amended pleadings and supplemental pleadings shall contain all allegations which a party intends to pursue. All new material in the amended pleadings shall be underlined. The original of the amended pleading shall be attached to the motion to amend the pleading so that it may be filed if the motion to amend is granted.

Local Rule 15.1; *see* FED.R.CIV.P. 15.

Plaintiff states that after this incident he was taken to the Menard Health Care Unit, where an unknown doctor and two unknown medical technicians cleaned and bandaged his cuts and bruises, but failed to provide him any pain medication, despite his "excruciating" pain. Immediately after, Plaintiff was transferred to Pontiac Correctional Center. Upon his arrival he requested pain medication and food from an unnamed Lieutenant. He states that he "was never provided with medical attention, medication, or food." However, Plaintiff contradicts himself by stating in the next paragraph that the next day (July 19, 2003), he went to the infirmary (presumably at Pontiac, although he does not specifically state it), where his wounds were cleaned and he was prescribed Tylenol for four days.

The Supreme Court has recognized that "deliberate indifference to serious medical needs of prisoners" may constitute cruel and unusual punishment under the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *Farmer v. Brennan*, 511 U.S. 825 (1994). This encompasses a broader range of conduct than intentional denial of necessary medical treatment, but it stops short of "negligen[ce] in diagnosing or treating a medical condition." *Estelle,* 429 U.S. at 106. *See also Jones v. Simek,* 193 F.3d 485, 489 (7th Cir. 1999); *Steele v. Choi*, 82 F.3d 175, 178 (7th Cir. 1996), *cert. denied,* 519 U.S. 897 (1996).

> A prisoner raising an Eighth Amendment claim against a prison official therefore must satisfy two requirements. The first one is an objective standard: "[T]he deprivation alleged must be, objectively, 'sufficiently serious.'" *Farmer*, 511 U.S. at —, 114 S.Ct. at 1977. As the Court explained in *Farmer*, "a prison official's act or omission must result in the denial of the minimal civilized measure of life's necessities." *Id.* The second requirement is a subjective one: "[A] prison official must have a 'sufficiently culpable state of mind,'" one that the Court has defined as "deliberate indifference." *Id; see Hudson v. McMillian*, 503 U.S. 1, 5, 112 S.Ct. 995, 998, 117 L.Ed.2d 156 (1992) ("[T]he appropriate inquiry when an inmate alleges that prison officials failed to attend to serious medical needs is whether the officials exhibited 'deliberate indifference.'"); *Estelle v. Gamble*, 429 U.S. 97, 104, 97 S.Ct. 285, 291, 50 L.Ed.2d 251 (1976) ("[D]eliberate indifference to serious medical needs

of prisoners constitutes the 'unnecessary and wanton infliction of pain.'").

*Vance v. Peters,* 97 F.3d 987, 991-992 (7th Cir. 1996), *cert. denied,* 520 U.S. 1230 (1997). However, the Supreme Court stressed that this test is not an insurmountable hurdle for inmates raising Eighth Amendment claims:

> [A]n Eighth Amendment claimant need not show that a prison official acted or failed to act believing that harm actually would befall an inmate; it is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm.... Whether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence, ... and a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious.

*Farmer,* 511 U.S. at 842.

The Seventh Circuit's decisions following this standard for deliberate indifference in the denial or delay of medical care require evidence of a defendant's actual knowledge of, or reckless disregard for, a substantial risk of harm. The Circuit also recognizes that a defendant's inadvertent error, negligence or even ordinary malpractice is insufficient to rise to the level of an Eighth Amendment constitutional violation.

> Neglect of a prisoner's health becomes a violation of the Eighth Amendment only if the prison official named as defendant is deliberately indifferent to the prisoner's health – that is, only if he 'knows of and disregards an excessive risk to inmate health or safety.'

*Williams v. O'Leary*, 55 F.3d 320, 324 (7th Cir.), *cert. denied,* 516 U.S. 993 (1995); *see also Steele*, 82 F.3d at 179 (concluding there was insufficient evidence of doctor's knowledge of serious medical risk or of his deliberate indifference to that risk; emphasizing that even malpractice is not enough proof under *Farmer*); *Miller v. Neathery*, 52 F.3d 634, 638-39 (7th Cir. 1995) (applying *Farmer* mandate in jury instruction). However, a plaintiff inmate need not prove that a defendant intended the harm that ultimately transpired or believed the harm would occur. *Haley v. Gross*, 86 F.3d 630,

641 (7th Cir. 1996).

Here, Plaintiff states that his wounds were treated in the Menard Health Care Unit immediately after the incident, and then again the next day at Pontiac. He states that he was not given pain medication at Menard, or upon his arrival at Pontiac, but he received Tylenol each day for the next four days. Although Plaintiff's pain may have presented a serious medical need, the facts as described by Plaintiff to not demonstrate the culpable state of mind required to show deliberate indifference. Plaintiff's wounds were treated immediately after he received them and again the next day. He was not immediately given pain medication, but did receive Tylenol at Pontiac after he requested it. This delay of approximately one day in receiving pain medication, particularly when Plaintiff was not denied medical treatment entirely, does not constitute deliberate indifference. At best, it demonstrates negligence, which, as noted above, is not actionable under the Eighth Amendment. Accordingly, Count 2 is **DISMISSED** from the action with prejudice. *See* 28 U.S.C. § 1915A.

### COUNT 3

Plaintiff states that on July 24, 2003, Defendant Smithson, a personal friend of Defendant Childers, assaulted on Plaintiff by "brutally" yanking and ripping his arms and hands from the chuck hole in his cell door and then opening the cell door and grinding Plaintiff's face into the cement floor. Defendant Anderson, also present, twisted Plaintiff's ankles until his shoes came off. Defendant Starkey looked on, but did not attempt to stop the alleged assault.

The next day Plaintiff informed Defendant Mote of the assault. Plaintiff was later interviewed by two internal affairs officers. When he returned to the unit, Defendant Starkey assaulted Plaintiff a second time by ripping his hands out of the chuckhole, manhandling and

parading Plaintiff down the gallery then forcefully throwing him to the ground in his cell. Defendant Starkey ordered him to stop complaining.

As stated above, the intentional use of excessive force by prison guards against an inmate without penological justification constitutes cruel and unusual punishment in violation of the Eighth Amendment and is actionable under Section 1983. *Hudson v. McMillian*, 503 U.S. 1, 6-7 (1992); *DeWalt v. Carter*, 224 F.3d 607, 619 (7th Cir. 2000). "[W]henever prison officials stand accused of using excessive physical force in violation of the Cruel and Unusual Punishments Clause, the core judicial inquiry is . . . whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson*, 503 U.S. at 6-7. An inmate seeking damages for the use of excessive force need not establish serious bodily injury to make a claim, but not "every malevolent touch by a prison guard gives rise to a federal cause of action. . . . [the] prohibition of 'cruel and unusual' punishment necessarily excludes from constitutional recognition de minimis uses of physical force, provided that the use of force is not of a sort 'repugnant to the conscience of mankind.'" *Id.* at 9-10; *see also Outlaw v. Newkirk*, 259 F.3d 833, 837-38 (7th Cir. 2001). Based on these standards and Plaintiff's factual allegations, Plaintiff may proceed against Defendants Smithson, Anderson, and Starkey in Count 3.

## COUNT 4

On July 28, 2003, a hearing was held before the adjustment committee at Pontiac on a disciplinary ticket from Menard Correctional Center regarding the July 18 incident. The adjustment committee report (submitted by Plaintiff as an exhibit to the complaint) indicates that Plaintiff refused to appear. Witness statements were made part of the record. Plaintiff was found guilty of assaulting a staff member and was disciplined with a one-year demotion to c-grade, one year in

segregation, one year loss of good conduct credit, and losses of commissary, yard, audio/visual, and contact visits for one year.

On July 30, 2003, Plaintiff was taken to a second disciplinary hearing on another disciplinary ticket from Menard (also stemming from the July 18 incident) for disobeying a direct order. Adjustment committee member Defendant Dallas informed Plaintiff, who was present for the hearing, that because he had already been disciplined for the assault charge, he would not be disciplined further on this ticket.  However, according to the adjustment committee report, Plaintiff was given an additional three-month demotion to c-grade, three months in segregation, three-month loss of commissary, and a three-month loss of audio/visual.  Plaintiff states that the following procedural irregularities occurred at this second hearing.  Defendant Smithson was allowed to comment on Plaintiff's assaults at Pontiac in the hearing, even though "such matters ha[d] no b[ea]ring on the charges in question."  The committee made no good faith effort to question Plaintiff's witnesses.  Plaintiff was not allowed to submit questions for witnesses.  Plaintiff was not allowed to speak at the hearing to present any kind of defense.  He was not allowed a "closed" hearing.  Defendant Dallas lied to him in promising that he would not be disciplined further on the charge.

Plaintiff's claims of procedural irregularities most closely resemble a claim of denial of due process.  When a plaintiff brings an action under § 1983 for procedural due process violations, he must show that the state deprived him of a constitutionally protected interest in "life, liberty, or property" without due process of law.  *Zinermon v. Burch*, 494 U.S. 113, 125 (1990). An inmate has a due process liberty interest in being in the general prison population only if the conditions of his or her confinement impose "atypical and significant hardship...in relation to the ordinary incidents

of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995). The Seventh Circuit Court of Appeals has adopted an extremely stringent interpretation of *Sandin*. In this Circuit, a prisoner in disciplinary segregation at a state prison has a liberty interest in remaining in the general prison population only if the conditions under which he or she is confined are substantially more restrictive than administrative segregation at the most secure prison in that state. *Wagner v. Hanks*, 128 F.3d 1173, 1175 (7th Cir. 1997). If the inmate is housed at the most restrictive prison in the state, he or she must show that disciplinary segregation there is substantially more restrictive than administrative segregation at that prison. *Id.* In the view of the Seventh Circuit Court of Appeals, after *Sandin* "the right to litigate disciplinary confinements has become vanishingly small." *Id.* Indeed, "when the entire sanction is confinement in disciplinary segregation for a period that does not exceed the remaining term of the prisoner's incarceration, it is difficult to see how after *Sandin* it can be made the basis of a suit complaining about a deprivation of liberty." *Id.*

In the case currently before the Court, Plaintiff was sent to disciplinary segregation for three months. Nothing in the complaint or exhibits suggests that the conditions that he had to endure while in disciplinary segregation were substantially more restrictive than administrative segregation in the most secure prison in the State of Illinois. Plaintiff also claims that he was demoted to c-grade and lost commissary privileges. However, these allegations do not present viable constitutional claims. *See, e.g., Thomas v. Ramos,* 130 F.3d 754, 762 n.8 (7th Cir. 1997) (and cases cited therein) (no protected liberty interest in demotion to C-grade status and loss of commissary privileges). As for the loss of audio/visual access, Plaintiff has not shown how this requirement imposed an atypical and significant hardship on him in relation to the ordinary incidents of prison life. Therefore, Plaintiff's due process claim is without merit; Count 4 is **DISMISSED** from the action with

prejudice.  *See* 28 U.S.C. § 1915A.

## COUNT 5

Plaintiff states that on September 5, 2003, Defendant Anderson moved him to a new cell that was "covered in excrement and reeked an unb[e]arable stench and had a def[e]cated and urine stained mattress." Plaintiff asked for a new mattress and that the cell be cleaned or that he be provided cleaning supplies, but his requests were denied. Despite numerous grievances, Plaintiff was forced to endure these conditions for two months.

The Eighth Amendment prohibiting cruel and unusual punishment is applicable to the states through the Fourteenth Amendment. It has been a means of improving prison conditions that were constitutionally unacceptable. *See, e.g., Robinson v. California*, 370 U.S. 660, 666 (1962); *Sellers v. Henman*, 41 F.3d 1100, 1102 (7th Cir. 1994). As the Supreme Court noted in *Rhodes v. Chapman,* 452 U.S. 337, 346 (1981), the amendment reaches beyond barbarous physical punishment to prohibit the unnecessary and wanton infliction of pain and punishment grossly disproportionate to the severity of the crime. *Id.,* (*quoting Gregg v. Georgia*, 428 U.S. 153, 173 (1976)). The Constitution also prohibits punishment that is totally without penological justification. *Gregg*, 428 U.S. at 183.

Not all prison conditions trigger Eighth Amendment scrutiny–only deprivations of basic human needs like food, medical care, sanitation, and physical safety. *Rhodes,* 452 U.S. at 346 ; *See also James v. Milwaukee County*, 956 F.2d 696, 699 (7th Cir. 1992). In order to prevail on a conditions of confinement claim, a plaintiff must allege facts that, if true, would satisfy the objective and subjective components applicable to all Eighth Amendment claims. *McNeil v. Lane,* 16 F.3d 123, 124 (7th Cir. 1994); *See also Wilson v. Seiter,* 501 U.S. 294, 302 (1991). The objective component focuses on the nature of the acts or practices alleged to constitute cruel and unusual

punishment. *Jackson v. Duckworth,* 955 F.2d 21, 22 (7th Cir. 1992). The objective analysis examines whether the conditions of confinement exceeded contemporary bounds of decency of a mature civilized society. *Id*. The condition must result in unquestioned and serious deprivations of basic human needs or deprive inmates of the minimal civilized measure of life's necessities. *Rhodes*, 452 U.S. at 347; *accord Jamison-Bey v. Thieret*, 867 F.2d 1046, 1048 (7th Cir. 1989); *Meriwether v. Faulkner*, 821 F.2d 408, 416 (7th Cir 1987).

In addition to showing objectively serious conditions, a plaintiff must also demonstrate the subjective component to state an Eighth Amendment claim. The subjective component of unconstitutional punishment is the intent with which the acts or practices constituting the alleged punishment are inflicted. *Jackson*, 955 F.2d at 22. The subjective component requires a prison official had a sufficiently culpable state of mind. *Wilson*, 501 U.S. at 298; *see also McNeil*, 16 F.3d at 124. In conditions of confinement cases, the relevant state of mind is deliberate indifference to inmate health or safety; the official must be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he also must draw the inference. *See, e.g., Farmer v. Brennan*, 511 U.S. 825, 837; *Wilson*, 501 U.S. at 303; *Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *DelRaine v. Williford*, 32 F.3d 1024, 1032 (7th Cir. 1994). The deliberate indifference standard is satisfied if the plaintiff shows that the prison official acted or failed to act despite the official's knowledge of a substantial risk of serious harm. *Farmer v. Brennan*, 511 U.S. at 842. A failure of prison officials to act in such circumstances suggests that the officials actually want the prisoner to suffer the harm. *Jackson*, 955 F.2d at 22. It is well-settled that mere negligence is not enough. *See, e.g., David v. Cannon*, 474 U.S. 344, 347-48 (1986).

Here, Plaintiff had to endure conditions that deprived him of the minimal civilized measure

of life's necessities, meeting the objective component.  Plaintiff has also alleged that Defendant Anderson was aware of the conditions, yet failed to act despite his knowledge "of a substantial risk of serious harm."  Based on these allegations, Plaintiff has stated a claim; Count 5 cannot be dismissed at this point in the litigation.

However, Plaintiff also named Defendants Mote, Hile, and Walker, in this Count stating that they knew about the conditions through the grievance process but did not take any corrective action. These allegations are not sufficient to bring them in as defendants under this claim.  "The doctrine of respondeat superior does not apply to § 1983 actions; thus to be held individually liable, a defendant must be 'personally responsible for the deprivation of a constitutional right.' " *Sanville v. McCaughtry*, 266 F.3d 724, 740 (7th Cir. 2001), *quoting Chavez v. Ill. State Police*, 251 F.3d 612, 651 (7th Cir. 2001).  *See also Crowder v. Lash,* 687 F.2d 996, 1006 (7th Cir. 1982) (director of state correctional agency not personally responsible for constitutional violations within prison system solely because grievance procedure made him aware of it and he failed to intervene).  Accordingly, Plaintiff may proceed on Count 5 against Defendant Anderson only.

### COUNT 6

On September 18, 2003, Defendants Mathews and Smithson searched Plaintiff's cell, throwing Plaintiff's mattress, legal documents, and personal property on the floor.  Defendant Smithson also threatened the Plaintiff, stating, "if you assault one of mine, I'm going to assault you."

A prisoner has no expectation of privacy in his prison cell.

> [S]ociety is not prepared to recognize as legitimate any subjective expectation of privacy that a prisoner might have in his prison cell and that, accordingly, the Fourth Amendment proscription against unreasonable searches does not apply within the confines of the prison cell. The recognition of privacy rights for prisoners in their individual cells simply cannot be reconciled with the concept of incarceration and the needs and objectives of penal institutions.

*Hudson v. Palmer*, 468 U.S. 517, 526 (1984). Accordingly, Plaintiff has no constitutional claim regarding the search of his cell.

As for the threats and harassment, isolated, infrequent incidents of verbal abuse do not give rise to an Eighth Amendment claim. *See, e.g., Gutierrez v. Peters*, 111 F.3d 1364, 1375 (7th Cir. 1997); *Kincaid v. Vail*, 969 F.2d 594, 602 (7th Cir. 1992).

> Standing alone, simple verbal harassment does not constitute cruel and unusual punishment, deprive a prisoner of a protected liberty interest or deny a prisoner equal protection of the laws. *See Ivey v. Wilson*, 832 F.2d 950, 955 (6th Cir. 1987) (per curiam) (Eighth Amendment); *Patton*, 822 F.2d at 700 (due process); *Williams*, 180 F.3d at 705-06 (equal protection).

*DeWalt v. Carter*, 224 F.3d 607, 612 (7th Cir. 2000). Accordingly, Plaintiff has failed to state any constitutional violations based on the facts alleged in this count. Thus, Count 6 is **DISMISSED** from the action with prejudice. *See* 28 U.S.C. § 1915A.

## COUNT 7

Plaintiff filed grievances regarding the July 18 assault by Defendant Childers; the July 24 assault by Defendants Smithson, Anderson, and Starkey; and the disciplinary hearings of July 28 and 30. His grievances were not dealt with to Plaintiff's satisfaction: some were lost, some were ignored, some were denied as untimely, and none caused any prison officials to take corrective action.

"[A] state's inmate grievance procedures do not give rise to a liberty interest protected by the due process clause." *Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1995). The Constitution requires no procedure at all, and the failure of state prison officials to follow their own procedures does not, of itself, violate the Constitution. *Maust v. Headley,* 959 F.2d 644, 648 (7th Cir. 1992); *Shango v. Jurich*, 681 F.2d 1091 (7th Cir. 1982). Accordingly, Plaintiff has not stated a claim of

constitutional dimension on these facts; Count 7 is **DISMISSED** from the action with prejudice. See 28 U.S.C. § 1915A.

## COUNT 8

Plaintiff alleges that Defendant Childers's assault of Plaintiff on July 18, 2003, the false disciplinary charges brought against Plaintiff regarding that assault, and the assaults of Plaintiff by officers at Pontiac were all acts of retaliation against him for his complaints about staff misconduct in grievances and lawsuits. Plaintiff states that the following were also acts of retaliation. On August 26, 2004, Defendants Smithson, Bernard, Siepp, and Dallas conducted a shake down of Plaintiff's cell, throwing Plaintiff's property on the floor and destroying some of Plaintiff's legal documents. Defendant Smithson caused small cuts and bruises on Plaintiff's wrists while tightening his handcuffs. Defendants John Does 1 and 2 (grievance officers), Mote, Hile, and Walker refused to respond to his grievances in an act of retaliation for Plaintiff's prior lawsuits. Finally, Plaintiff states that Defendants Smithson, Anderson, Starkey, Wiles, McNabb, and Thenny acted in unspecified ways to retaliate against Plaintiff.

Prison officials may not retaliate against inmates for filing grievances or otherwise complaining about their conditions of confinement. *See, e.g., Walker v. Thompson*, 288 F.3d 1005 (7th Cir. 2002); *DeWalt v. Carter*, 224 F.3d 607 (7th Cir. 2000); *Babcock v. White*, 102 F.3d 267 (7th Cir. 1996); *Cain v. Lane*, 857 F.2d 1139 (7th Cir. 1988). Furthermore, "[a]ll that need be specified is the bare minimum facts necessary to put the defendant on notice of the claim so that he can file an answer." *Higgs v. Carver*, 286 F.3d 437, 439 (7th Cir. 2002). Naming the suit and the act of retaliation is all that is necessary to state a claim of improper retaliation. *Id.*

Although Plaintiff states that Defendants Wiles, McNabb, and Thenny retaliated against him,

he does not state how their retaliation manifested itself. As such, Plaintiff has failed to state a claim against them on the facts presented in this count. In summary, Plaintiff may proceed on Count 8 of the complaint against Defendants Childers, Smithson, Anderson, Starkey, Bernard, Dallas, Siepp, John Does 1 and 2, Mote, Hile, and Walker.

## DISPOSITION

In summary, Plaintiff may proceed on Count 1 against Defendants Childers, Mitchell, and the unknown corrections officers; on Count 3 against Defendants Smithson, Anderson, and Starkey; on Count 5 against Defendant Anderson; and on Count 8 against Defendants Childers, Smithson, Anderson, Starkey, Bernard, Dallas, Siepp, John Does 1 and 2, Mote, Hile, and Walker. Counts 2, 4, 6, and 7 are **DISMISSED** from the action, as are Defendants Wiles, McNabb, Thenny, and Mathews.

**IT IS HEREBY ORDERED** that Plaintiff shall complete and submit a USM-285 form for Defendants Dallas, Mote, and the unnamed (John Doe) defendants within **THIRTY (30) DAYS** of the date of entry of this Memorandum and Order.[2] The Clerk is **DIRECTED** to send Plaintiff **10** USM-285 forms with Plaintiff's copy of this Memorandum and Order. **Plaintiff is advised that service will not be made on a defendant until Plaintiff submits a properly completed USM-285 form for that defendant.**

The Clerk is **DIRECTED** to prepare Form 1A (Notice of Lawsuit and Request for Waiver of Service of Summons) and Form 1B (Waiver of Service of Summons) for *Defendants Childers, Mitchell, Smithson, Anderson, Starkey, Bernard, Dallas, Siepp, Mote, Hile, and Walker*. The

---

[2]The Court's docket indicates that Plaintiff has already submitted USM-285 forms for Defendants Childers, Mitchell, Smithson, Anderson, Starkey, Bernard, Siepp, Hile, and Walker.

Clerk shall forward those forms, USM-285 forms submitted by Plaintiff, and sufficient copies of the complaint and amended complaint (Doc. 11) to the United States Marshal for service.

The United States Marshal is **DIRECTED**, pursuant to Rule 4(c)(2) of the Federal Rules of Civil Procedure, to serve process on ***Defendants Childers, Mitchell, Smithson, Anderson, Starkey, Bernard, Dallas, Siepp, Mote, Hile, and Walker*** in the manner specified by Rule 4(d)(2) of the Federal Rules of Civil Procedure.  Process in this case shall consist of the complaint, the amended complaint (Doc. 11), applicable forms 1A and 1B, and this Memorandum and Order.  For purposes of computing the passage of time under Rule 4(d)(2), the Court and all parties will compute time as of the date it is mailed by the Marshal, as noted on the USM-285 form. ***Service shall not be made on the unnamed (John Doe) defendants until such time as Plaintiff has identified them by name on a USM-285 form and in a properly filed amended complaint.  Plaintiff is ADVISED that it is Plaintiff's responsibility to provide the Court with the names and service addresses for these individuals.***

With respect to former employees of Illinois Department of Corrections who no longer can be found at the work address provided by Plaintiff, the Department of Corrections shall furnish the Marshal with the Defendant's last-known address upon issuance of a court order which states that the information shall be used only for purposes of effectuating service (or for proof of service, should a dispute arise) and any documentation of the address shall be retained only by the Marshal. Address information obtained from IDOC pursuant to this order shall not be maintained in the court file, nor disclosed by the Marshal.

The United States Marshal shall file returned waivers of service as well as any requests for waivers of service that are returned as undelivered as soon as they are received.  If a waiver of

service is not returned by a defendant within **THIRTY (30) DAYS** from the date of mailing the request for waiver, the United States Marshal shall:

- Request that the Clerk prepare a summons for that defendant who has not yet returned a waiver of service; the Clerk shall then prepare such summons as requested.

- Personally serve process and a copy of this Order upon the defendant pursuant to Rule 4 of the Federal Rules of Civil Procedure and 28 U.S.C. § 566(c).

- Within ten days after personal service is effected, the United States Marshal shall file the return of service for the defendant, along with evidence of any attempts to secure a waiver of service of process and of the costs subsequently incurred in effecting service on said defendant. Said costs shall be enumerated on the USM-285 form and shall include the costs incurred by the Marshal's office for photocopying additional copies of the summons and complaint and for preparing new USM-285 forms, if required. Costs of service will be taxed against the personally served defendant in accordance with the provisions of Federal Rule of Civil Procedure 4(d)(2) unless the defendant shows good cause for such failure.

Plaintiff is **ORDERED** to serve upon defendant or, if appearance has been entered by counsel, upon that attorney, a copy of every further pleading or other document submitted for consideration by this Court. He shall include with the original paper to be filed with the Clerk of the Court a certificate stating the date that a true and correct copy of any document was mailed to defendant or his counsel. Any paper received by a district judge or magistrate judge which has not been filed with the Clerk or which fails to include a certificate of service will be disregarded by the Court.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the complaint, and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this cause is **REFERRED** to a United States Magistrate Judge for further pre-trial proceedings.

Further, this entire matter is hereby **REFERRED** to a United States Magistrate Judge for

disposition, as contemplated by Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *should all the parties consent to such a referral.*

Plaintiff is under a continuing obligation to keep the Clerk and each opposing party informed of any change in his whereabouts. This shall be done in writing and not later than seven (7) days after a transfer or other change in address occurs.

**IT IS SO ORDERED.**

**DATED this 29th day of September, 2006.**

                                           **s/ Michael J. Reagan**
                                           **MICHAEL J. REAGAN**
                                           **United States District Judge**