IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| **FABIAN SANTIAGO**, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| V. | ) | Civil No. **05-512-MJR-CJP** |
| | ) | |
| **C/O SMITHSON**, **C/O ANDERSON**, | ) | |
| **C/O STARKEY, C/O BERNARD**, | ) | |
| **LT. DALLAS, LT. SIEPP**, | ) | |
| **WARDEN MOTE, SHERRY HILE**, | ) | |
| **DIRECTOR WALKER, and** | ) | |
| **J. MITCHELL**, | ) | |
| | ) | |
| Defendants. | ) | |

## REPORT AND RECOMMENDATION

**PROUD, Magistrate Judge:**

The ten defendants remaining in this action, Robert Smithson, Joel Starkey, James Bernard, Benny Dallas, Paul Siepp, Stephen Mote, Sherry (Hile) Benton, Roger E. Walker, Jeremy Anderson and Jeffrey Mitchell, are all before the Court seeking summary judgment. (Doc. 168).   Plaintiff Fabian Santiago, proceeding pro se, has filed a response (Doc. 174), to which the defendants have filed a reply (Doc. 178).

Counts 1, 3, 5 and 8 remain.  (*See* Doc. 12). Relative to Counts 1, 3 and 8, the defendants argue that plaintiff failed to exhaust administrative remedies as required pursuant to 42 U.S.C. § 1997e(a).  Defendants also contend that they are entitled to summary judgment on Count 5, based on the legal merits of the claim; in the alternative, qualified immunity is claimed.

This Report and Recommendation is respectfully submitted to United States District Judge Michael J. Reagan pursuant to 28 U.S.C. §§ 636(b)(1)(B) and (C).

1

**The Complaint**

The following is a synopsis of the remaining claims, drawn from the complaint and the Court's threshold order.  (*See* Docs. 1 and 12).  The location of the incidents is drawn from plaintiff's deposition testimony and is included for a better understanding of the alleged interrelationship of the claims.  (*See* Docs. 168-2 and 168-3).

COUNT 1:

Count 1 asserts an Eighth Amendment "excessive force" claim against defendant Mitchell.  Plaintiff alleges that, while housed at Menard Correctional Center, on July 18, 2003, he and defendant Correctional Officer ("C/O") Mitchell had a disagreement, after which Mitchell returned with Sergeant Childers (previously dismissed as a defendant).  According to plaintiff, Childers struck and kicked him, while Mitchell looked on.  Mitchell then handcuffed plaintiff and escorted him to the bathroom.  Inside the bathroom, Childers then beat plaintiff again, while numerous correctional officers stood by and watched.  Mitchell then purportedly directed plaintiff to clean himself up.  The Court has already noted that Mitchell's potential liability stems from the alleged failure to intervene.

COUNT 3:

Count 3 alleges that defendants C/O Smithson, C/O Anderson, and C/O Starkey, for unconstitutional use of excessive force, in violation of the Eighth Amendment.  More specifically, it is alleged that on July 24, 2003, while plaintiff was housed at Pontiac Correctional Center, Smithson, a friend of Sergeant Childers (see Count 1), assaulted plaintiff by "brutally" yanking and ripping his arms and hands from the chuckhole in his cell door and then opening the cell door and grinding plaintiff's face into the cement floor.  Defendant Anderson, also present,

2

twisted plaintiff's ankles until his shoes came off.  Defendant Starkey looked on, but did not

attempt to stop the alleged assault.  It is further alleged that the next day, July 25, 2003, Starkey

assaulted plaintiff a second time by ripping his hands out of the chuckhole, manhandling and

parading plaintiff down the gallery then forcefully throwing him to the ground in his cell.

**COUNT 5:**

Count 5 alleges that, while plaintiff was housed at Pontiac Correctional Center, defendant

Anderson imposed cruel and unusual conditions of confinement upon plaintiff, in violation of the

Eighth Amendment.  On September 5, 2003, C/O Anderson allegedly moved plaintiff into a cell

that was "covered in excrement and reeked an unb[e]arable stench and had a def[e]cated and

urine stained mattress."  Plaintiff asked for a new mattress and that the cell be cleaned or that he

be provided cleaning supplies, but his requests were denied.  Despite numerous grievances,

plaintiff was forced to endure these conditions for two months.

**COUNT 8:**

Count 8 has been construed by the Court as alleging that defendants Smithson, Anderson,

Starkey, Bernard, Dallas, Siepp, Mote, Hile and Walker retaliated against plaintiff in violation of

the First Amendment, for litigation, reporting staff misconduct and filing grievances.  From

plaintiff's perspective, the July 18, 2003, assault at Menard put in motion a series of retaliatory

acts, including assaults, false disciplinary charges and the specific altercations at issue in Counts

3 and 5.  (*See* Doc. 1, p. 8, ¶ 22).  Plaintiff also draws in an additional incident, alleging that on

August 26, 2004, defendants Smithson, Bernard, Siepp, and Dallas conducted a shake down of

plaintiff's cell, wherein plaintiff's cell was torn apart ("property all over the floor") and it was

demanded that plaintiff get rid of all of his legal documentation. ((See Doc. 1, p. 7, ¶ 21).

During the August 26, 2004, incident, defendant Smithson allegedly caused small cuts and bruises on plaintiff's wrists while tightening plaintiff's handcuffs.  It is further alleged that defendants Mote, Hile, and Walker refused to respond to plaintiff's grievances in an act of retaliation for plaintiff's prior lawsuits against the Illinois Department of Corrections, and in retaliation for state and federal investigations stemming from the incidents outlined in the complaint.  (Doc. 1, p. 8, ¶ 22).

## The Arguments Presented

The defendants present the following arguments:

1.    Defendant Anderson is entitled to summary judgment on Count 5 as a matter of law, based on plaintiff's deposition testimony; in the alternative, defendant Anderson is entitled to qualified immunity;

2.    Defendants Smithson, Anderson, Starkey, Bernard, Dallas, Siepp, Mote, Hile and Walker are entitled to summary judgment on the retaliation claims in Count 8:

   A.     Plaintiff has presented merely a chronology of events; and

   B.     Defendant Walker lacked the requisite personal involvement;

3.    Plaintiff failed to exhaust administrative remedies relative to Counts 1, 3 and 8.

## 1.  The Exhaustion Requirement

The exhaustion of administrative remedies must be addressed first.  Plaintiff's claims are subject to the exhaustion requirement set forth in 42 U.S.C. § 1997e(a):

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

*Perez v. Wisconsin Department of Corrections*, 182 F.3d 532 (7th Cir.1999), clarified that exhaustion of administrative remedies under § 1997e(a)– while not jurisdictional *per se*– is a

"precondition" to suit, regardless of the apparent futility of pursuing an administrative remedy, regardless of whether money damages are sought as a tangential remedy, and regardless of notions of judicial economy. The exhaustion requirement applies to all claims "about prison life." *Porter v. Nussle,* 534 U.S. 516, 532 (2002).

Significantly, exhaustion of administrative remedies is required *before* a case may be brought, even if exhaustion is accomplished during pendency of the case. *See* 42 U.S.C. § 1997e(a); *Perez,* 182 F.3d at 535-536. In other words, an inmate cannot file suit and then exhaust his administrative remedies while suit is pending. *Ford v. Johnson,* 362 F.3d 395, 398 (7th Cir. 2004). The Supreme Court has held that exhaustion means "proper exhaustion," that is, the inmate must file a timely grievance using the procedures put in place by the prison system, properly taking each step in the process. *Woodford v. Ngo,* 548 U.S. 81 (2006); *Pozo v. McCaughtry,* 286 F.3d 1022, 1024 (7th Cir. 2002). And the law of the Seventh Circuit emphasizes that the purpose of exhaustion is to give prison officials an opportunity to address the inmate's claims administratively/internally, prior to federal litigation. Only when that is done has the prisoner properly exhausted all available remedies. *See, e.g., Kaba v. Stepp,* 458 F.3d 678, 684 (7th Cir. 2006); *Dole v. Chandler,* 438 F.3d 804, 809 (7th Cir. 2006); *see also Porter v. Nussle,* 534 U.S. 516, 524-525(2002).

Illinois Department of Corrections regulations regarding the procedures inmates must follow are set forth at Illinois Administrative Code § 504.810 *et seq.* Those procedures first require an inmate to attempt to resolve grievances through his counselor. 20 Ill. Admin. Code § 504.810(a). If that step is unsuccessful, the inmate may file a written grievance on a specified form within 60 days of discovery of the incident or problem giving rise to the grievance unless

good cause can be shown for extending that period. *Id.* The grievance form must be addressed to the grievance officer and "deposited in the living unit mailbox or other designated repository." 20 Ill. Admin. Code § 504.810(b). The grievance should "contain factual details regarding each aspect of the offender's complaint, including what happened, when, where, and the name of each person who is the subject of or who is otherwise involved in the complaint." *Id.*

The grievance officer provides the initial review of grievances. 20 Ill. Admin. Code § 504.830(a). If the grievance is found to have no merit, the regulations (20 Ill. Admin. Code § 504.830(d)) direct the grievance officer to consider the grievance and report findings and recommendations to the highest ranking official of a correctional facility, i.e. the warden. (20 Ill. Admin. Code § 504.802). The warden then advises the inmate of his or her decision within two months where reasonably feasible. 20 Ill. Admin. Code § 504.830(d).

If the inmate is not satisfied with the warden's decision, he may appeal in writing to the director of the Illinois Department of Corrections within 30 days. 20 Ill. Admin. Code § 504.850(a). After reviewing the grievance and the responses by the grievance officer and the warden, the director decides whether the grievance: (a) requires a hearing before the Administrative Review Board ("ARB"); (b) is without merit; or (c) can be resolved without a hearing. 20 Ill. Admin. Code § 504.850(b). If the grievance proceeds to a hearing, the ARB submits a written report to the director who reviews the findings and recommendations of the ARB and makes a final determination within six months. 20 Ill. Admin. Code § 504.850(b)-(f).

Failure to exhaust administrative remedies is an affirmative defense; the defendant correctional officials have the burden of proving that the inmate had available remedies that he did not utilize. *See, e.g., Dole v. Chandler,* 438 F.3d 804, 809 (7th Cir. 2006); *Dale v. Lappin,*

6

376 F.3d 652, 655 (7th Cir. 2004).  A remedy is "available" if the administrative procedure can lead to some relief, even if it is not the precise relief the inmate wants.  *See Booth v. Churner,* 532 U.S. 731, 741 and f n. 6 (2001); *Larkin v. Galloway,* 266 F.3d 718, 723 (7th Cir. 2001). "Prison officials may not take unfair advantage of the exhaustion requirement . . . and a remedy becomes 'unavailable' if prison employees do not respond to a properly filed grievance or otherwise use *affirmative misconduct* to prevent a prisoner from exhausting."  *Dole v. Chandler,* 438 F.3d 804, 809 (7th Cir. 2006) (emphasis added) (citing *Lewis v. Washington,* 300 F.3d 829, 833 (7th Cir. 2002); and *Dale v. Lappin,* 376 F.3d 652, 656 (7th Cir. 2004).

In  *Pavey v. Conley,* 544 F.3d 739 (7th Cir. 2008), the Seventh Circuit delineated a three-step process for cases in which exhaustion is contested.

> (1) The district judge conducts a hearing on exhaustion and permits whatever discovery relating to exhaustion he deems appropriate. (2) If the judge determines that the prisoner did not exhaust his administrative remedies, the judge will then determine whether (a) the plaintiff has failed to exhaust his administrative remedies, and so he must go back and exhaust; (b) or, although he has no unexhausted administrative remedies, the failure to exhaust was innocent (as where prison officials prevent a prisoner from exhausting his remedies), and so he must be given another chance to exhaust (provided that there exist remedies that he will be permitted by the prison authorities to exhaust, so that he's not just being given a runaround); or (c) the failure to exhaust was the prisoner's fault, in which event the case is over. (3) If and when the judge determines that the prisoner has properly exhausted his administrative remedies, the case will proceed to pretrial discovery, and if necessary a trial, on the merits; and if there is a jury trial, the jury will make all necessary findings of fact without being bound by (or even informed of) any of the findings made by the district judge in determining that the prisoner had exhausted his administrative remedies.

***Id.* at 742.**

After reviewing the documentation and affidavits submitted by the parties, this Court discerned that, in light of aforementioned legal criteria, no evidentiary hearing was necessary.

Summary judgment is appropriate if the evidence shows that "there is no genuine issue of any material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *see Greeno v. Daley,* 414 F.3d 645, 652 (7th Cir. 2005).  Because the prison employees bear the burden on exhaustion, they must do more than point to a lack of evidence in the record; rather, they must "establish affirmatively" that the evidence is so one-sided that no reasonable fact-finder could find that plaintiff exhausted or was prevented from exhausting his administrative remedies.  *Reserve Supply Corp. v. Owens-Corning Fiberglas Corp.,* 971 F.2d 37, 42 (7th Cir. 1992); *see Branham v. Snow,* 392 F.3d 896, 906-907 (7th Cir. 2004).  A litigant's affidavit, based on personal knowledge, is sufficient to create a factual dispute.  *See Holmes v. Village of Hoffman Estate,* 511 F.3d 673, 680 (7th Cir. 2007).  However, the submission of additional evidence may, of course, be determinative in a situation that would otherwise be a "swearing contest" of affidavits.

### A.  Count 1

Count 1 asserts an Eighth Amendment "excessive force" / "failure to intervene" claim against defendant Mitchell, stemming from an alleged assault on July 18, 2003.  Defendant Mitchell contends that, although plaintiff submitted correspondence regarding the July 18, 2003, incident, he did not submit a timely grievance, thereby procedurally defaulting at the final step in the administrative process.  Defendant submits the affidavit of Sherry (Hile) Benton, in her capacity as Chairperson of the Administrative Review Board ("ARB"), indicating a formal grievance was not submitted to the ARB until March 26, 2004, and the appeal was not addressed because it was deemed not submitted in the applicable time frame.  (Doc. 168-1, pp. 1-5 (pp. 3-4 in particular)).

8

It is undisputed that plaintiff initiated a grievance dated August 29, 2003, regarding the July 18, 2003, assault(s) by Childers in the presence of Mitchell.  (Doc. 174-2, pp. 13-21).  There is also no dispute that the grievance was denied at all levels of the institutional review, with Chief Administrative Officer's concurrence on September 25, 2003.  (Doc. 174-2, p. 12). With that said, this Court notes a fatal error not addressed by the parties.

The August 29, 2003, grievance details incidents at both Menard Correctional Center and Pontiac Correctional Center.  The grievance was submitted at Pontiac Correctional Center. Issues that occur at a different facility than where the inmate is housed are supposed to be grieved directly to the ARB.  (20 Ill. Admin. Code § 504.870(a)(4); *see also* Doc. 174-2, p. 13). The response to the grievance states that the conduct of Menard staff is outside the grievance officer's jurisdiction, but the Pontiac issues are addressed.  (Doc. 174-2, p. 13).  The record contains documentation of an unspecified grievance received by the ARB on September 3, 2003, which was rejected as untimely.  (Doc. 174-2, p. 11).  Even *if* it were established that this was plaintiff's attempt to properly submit his August 29, 2003, grievance regarding the Menard issues directly to the ARB, it was clearly untimely– a month and a half after the July 18, 2003, incident.  According to plaintiff's affidavit, he did not submit the August 29, 2003, grievance to the ARB until October 3, 2003.  (Doc. 174-10, p. 13).  Plaintiff's purported submission on October 3, 2003, would obviously do nothing to cure the problem with how the grievance was pursued relative to the Menard issues.  On this basis alone, a preponderance of the evidence shows that plaintiff did not exhaust administrative remedies relative to the issues in Count 1.

For the benefit of the District Court, the following analysis is offered addressing the parties' respective arguments regarding Count 1.

According to plaintiff's affidavit, he forwarded the August 29, 2003, grievance to the ARB on October 3, 2003.  (Doc. 174-10, p. 13).  Another of plaintiff's affidavits explains that he forwarded the August 29, 2003, grievance to the ARB on October 3, 2003– paying 83¢ for postage.  (Doc. 174, p. 7, ¶ 19).  Plaintiff has submitted a copy of his inmate trust fund account reflecting an 83¢ charge for legal mail on October 3, 2003.  (Doc. 174-2, p. 10).

When he was not notified of any action on his grievance, plaintiff wrote to the ARB on December 5, 2003.  (Doc. 174-10, p. 13).  A copy of the December 5, 2003, letter is not in the record. [1]  On December 11, 2003, defendant Sherry Hile (now Benton) sent plaintiff a memo regarding his correspondence dated December 5, 2003, pertaining to an unanswered grievance.  (Doc. 174-2, p. 8).  Hile indicated she could not tell which grievance plaintiff was referring to, asking for more specifics, and directing plaintiff to send the grievance to the ARB.  (Doc. 174-2, p. 8).

According to his affidavit, on January 7, 2004, plaintiff sent Hile his grievance and correspondence dated January 1, 2004.  (Doc. 174-10, p. 13).  Plaintiff submits documentation indicating something was sent from plaintiff via certified mail to Hile at the ARB, and a receipt reflecting the mail was received, but which does not bear a legible date of receipt.  (Doc. 174-2, p. 5).  Plaintiff's January 1, 2003, letter does not indicate the grievance was sent along with the letter; the letter suggests that Hile must have received the grievance before and destroyed it.

_____

[1] There is no contention that the rejected grievance is the one at issue, as plaintiff's affidavit and other documentation make clear that he merely wrote an inquiry on December 5, 2003.  (Doc. 174-10, p. 13; Doc. 174-2, p. 8).  However, plaintiff has submitted an ARB form dated March 16, 2004, indicating a grievance regarding "DR 7/18/03" was received December 10, 2003, but was not addressed on the merits because it was not submitted within the proper time frame.  (Doc. 174-2, p. 1).

(Doc. 174-2, pp. 6-7).  Plaintiff subsequently forwarded correspondence to Hile on February 8, 2004, demanding a response.  (Doc. 174-10, p. 14; Doc. 174-2, p. 4).  A form response from Hile dated February 17, 2004, regarding February 8, 2004, correspondence about the August 29, 2003, grievance indicates Hile still has questions regarding plaintiff's reference to an August 29, 2003, grievance, and she does not "show" that she received or answered the grievance.  (Doc. 174-2, p. 3).  Plaintiff was again directed to provide a copy of the grievance.  (Doc. 174-2, p. 3).

        Plaintiff then wrote to Director Walker on March 10, 2004, explaining the ARB's contentions that the grievance was never received, and citing the (January 2004) certified mail receipt as evidence that it was received.  (Doc. 174-2, p. 2; Doc. 174-10, p. 14).  According to plaintiff's affidavit, on March 16, 2004, Melody Ford wrote to him on behalf of Director Walker, indicating his grievance was untimely.  (Doc. 174-10, p. 14; Doc. 174-2, p. 1).  However, the ARB form sent to plaintiff by Melody Ford indicates it is the denial of a grievance received December 10, 2003, regarding "DR 7/18/03."  (Doc. 174-2, p. 1).  Plaintiff testified in his deposition that he received disciplinary charges for the July 18, 2003, incident.  (Doc. 168-3, p. 15 (Santiago Deposition p. 50)).  And, as previously noted, plaintiff's affidavit makes clear that he merely wrote to the ARB on December 5, 2003, inquiring about the status of his grievance–not that he resent the grievance.  (Doc. 174-10, p. 13).  When Hile responded that she had not received any such grievance, plaintiff wrote back on January 1, 2004, making much of the fact that, based on his reference to the August 29, 2003, grievance in his December 5, 2003, letter, Hile could merely have asked the institution to produce the grievance.  (Doc. 174-2, p. 6). According to Hile's affidavit, a grievance was not submitted until March 26, 2004, and it was

denied as untimely.  (Doc. 168-1, p. 4).

Plaintiff argues that once he submitted his grievance on October 3, 2003, he had done all that was required of him, which is consistent with the holding in *Dole v. Chandler*, 438 F.3d 804 (7th Cir. 2006).  In *Dole* the inmate turned the complaint over for mailing in a timely fashion, but it purportedly was never received by the ARB; there was no mechanism to alert the inmate that the grievance was not received in time to submit a new, timely grievance, but the ARB never specifically directed the inmate to re-file the grievance, as is permitted pursuant to 20 Ill. Admin. Code § 504.810(a).  The Court of Appeals for the Seventh Circuit held that the inmate in *Dole* had done all that was procedurally required of him and it could not be said he had failed to exhaust his remedies.  *Dole* at 811.

Although the entire chronology of correspondence between plaintiff and the ARB has been set forth,  plaintiff's argument fails with the purported mailing of the grievance of October 3, 2003.  Defendant submits verified documentation that the October 3, 2003, expenditure of 83¢ was for mail that was actually weeks earlier.  (Doc. 178-1, pp. 5- 7).  Although the inmate trust fund line item cited by plaintiff is for October 3, 2003, according to the affidavit of an accountant in the Trust Fund Department at Pontiac, October 3, 2003, is the date plaintiff's account was debited to repay the state for mail actually sent on September 18, 2003.  (Doc. 178-1, p. 5).  The reference number of the line item plaintiff cites matches the documentation submitted by the defendant for mail sent on September 18, 2003.  This is overwhelming evidence in contradiction of plaintiff's assertion that he mailed his grievance to the ARB on October 3, 2003.  Therefore, this Court finds that plaintiff's affidavits indicating he mailed the grievance on October 3, 2003, are not credible.  Plaintiff's affidavits are the only evidence submitted to

counter the affidavit of Sherry (Hile) Benton indicating a formal grievance was not submitted to the ARB until March 26, 2004, and the appeal was rejected and not addressed because it was deemed not submitted in the applicable time frame.  (Doc. 168-1, pp. 1-5 (pp. 3-4 in particular)).  Therefore, this Court again concludes that plaintiff failed to exhaust his remedies relative to Count 1.

Having concluded that plaintiff did not timely submit his grievance to the ARB, no analysis of plaintiff's later correspondence and other attempts to send the grievance is warranted.  However, this Court observes that this scenario is analogous to *Cannon v. Washington*, 418 F.3d 714 (7th Cir. 2005).  In *Cannon*, the inmate timely mailed his grievance, it was returned for insufficient postage and was eventually received by the ARB one day late.  *Cannon*, 418 F.3d at 718.  The ARB denied the grievance as untimely but, in accordance with 20 Ill. Admin. Code § 504.810(a), invited the inmate to seek reconsideration by submitting a form explaining the delay and attaching the original grievance.  *Id.*  Rather than do as instructed, the inmate in *Cannon* wrote to the Director asking him to excuse the delay.  *Id.*  The Court of Appeals ruled that the inmate in *Cannon* had failed to file his grievance in the place and at the time the administrative rules required, therefore remedies had not been exhausted.  *Id.*  In *Dole*, the appellate court distinguished *Cannon*, observing that in *Dole* it was not disputed that the grievance had been timely mailed, therefore the inmate in *Dole* was found to have done all that was required of him and it could not be said he had failed to exhaust his remedies.  *Dole* 438 F.3d at 811.  The situation at bar is analogous to *Cannon*, not *Dole*, as plaintiff contends.

For the aforestated reasons, this Court recommends that plaintiff be found to have not exhausted administrative remedies relative to defendant Mitchell and Count 1.

13

**B.  Count 3**

Count 3 alleges that on July 24, 2003, at Pontiac Correctional Center, defendants C/O Smithson, C/O Anderson, and C/O Starkey, used excessive force against plaintiff, in violation of the Eighth Amendment.  Count 3 also alleges that on July 25, 2003, C/O Starkey used excessive force against plaintiff a second time.  Defendants Smithson, Anderson and Starkey assert that plaintiff did not submit a grievance or any other correspondence to the ARB.  Defendants support their position with the affidavit of ARB chairperson and record keeper Sherry (Hile) Benton, stating that a search of records did not reveal the submission of any grievance or other correspondence to the ARB regarding the July 24, 2003, incident.  (Doc. 168-1, p. 4).  The affidavit does <u>not</u> mention the July 25th incident, but for reasons that will be apparent, this is not fatal to the defendants' argument.

In response to the defendants' motion, plaintiff asserts that he filed two separate grievances, one dated August 13, 2003, the other dated August 29, 2003, pertaining to the assaults.  (Doc. 174, p. 7, ¶ 19).  The August 29, 2003, grievance is the <u>same</u> grievance analyzed with respect to Count 1.[2]  This Court has already concluded that the August 29, 2003, grievance was not submitted on October 3, 2003, and as a result plaintiff failed to exhaust all steps in the administrative process.  Therefore, the Court need only address the August 13, 2003, grievance.

The purpose of exhaustion is to give prison officials an opportunity to address the

---

[2]As previously noted The August 29, 2003, grievance details incidents at Menard (Count 1) and at Pontiac (Count 3).  The portion of the August 29, 2003, grievance regarding the assaults by Smithson, Anderson and Starkey on July 24, 2003, and by Starkey on July 25, 2003, are at Doc. 174-2, pp. 13-21 (pp. 17-19 in particular).

inmate's claims administratively/internally, prior to federal litigation.  Only when that is done

has the prisoner properly exhausted all available remedies.  *See, e.g., Kaba v. Stepp,* 458 F.3d

678, 684 (7th Cir. 2006); *Dole v. Chandler,* 438 F.3d 804, 809 (7th Cir. 2006); *see also  Porter v.*

*Nussle,* 534 U.S. 516, 524-525(2002).  According to its caption, the August 13, 2003, grievance

pertains to staff conduct and an August 13, 2003, disciplinary report.  (Doc. 174-4, pp. 7-11).

However, the *only* portion of the grievance regarding any of the events at issue in Count 3 states:

> On July 25, 2003 as I was leaving the North cellhouse to the infirmary I
> notified Warden Mote that on the July 24, 2003 C/O Smithson and C/O Anderson
> assaulted me while C/O Starkey looked on.
> After being taken to the infirmary I was interviewed by Internal Affairs
> who took my accounts of an assault which took place against me at the Menard
> C.C. as well as acts of retaliation at the Pontiac C.C. and C/O Smithson and C/O
> Andersons assault against me.

(Doc. 174-4, p. 7).  The actual focus of the grievance is disciplinary charges and other matters

not at issue in Count 3.  (*See* Doc. 174-4, p. 11 (regarding relief requested); *see also* Doc. 174-

10, p. 11 (plaintiff's affidavit discussing the issues raised in the August 13, 2003, grievance)).

Plaintiff's brief concedes that the August 29th grievance "offers up a more indepth [sic]

account of the assaults," *vis-a-vis* the August 13th grievance.  (Doc. 174, p. 7, ¶ 19).  Moreover,

when writing to his grievance officer about the status of the August 13, 2003, grievance, plaintiff

describes the grievance as, "Concerning disciplinary report of 7/18/03."  (Doc. 174-4, p. 6).  The

August 13th grievance does not even mention the July 25, 2003, incident involving C/O Starkey.

The July 24, 2003, incident involving defendants Smithson, Anderson and Starkey is mentioned,

but *only* to place the issues actually being pursued in context.  Thus, even if the August 13, 2003

grievance were found to have been properly exhausted, that grievance cannot carry the day for

plaintiff, relative to the issues in Count 3.  Although this Court has concluded that plaintiff did

not exhaust administrative remedies, further analysis of plaintiff's argument will be offered.

Plaintiff contends he never received a response to the August 13, 2003, grievance, so he wrote to Grievance Officer Thenny on September 16, 2003.  (Doc. 174, p. 8, ¶ 22; Doc. 174-4, p. 6).  Plaintiff submits a copy of his note to Thenny, which bears a handwritten remark:

Was Rec
9/13/03
C/O
Thenny

(Doc. 174-4, p. 6).  Although defendants correctly observe that this document has not been authenticated, plaintiff's affidavit asserts that the notation was on the document returned to him by Thenny.  (174-10, p. 11).  Defendants offer nothing to counter plaintiff's affidavit, therefore this Court concludes the document is what it appears to be, Thenny's acknowledgment that the August 13, 2003, grievance was received September 13, 2003 (within the 60-day period allotted for submitting a grievance).

On February 15, 2004 (long after the 60-day period allotted for review of the grievance had passed), plaintiff inquired about the status of the grievance and received a memo dated March 16, 2004, indicating the August 13, 2003, grievance had not been timely submitted.  (Doc. 174-4, p. 4; Doc. 174, p. 8, ¶ 22).  On March 18, 2004, plaintiff submitted all of his documentation regarding the August 13, 2003, grievance to the ARB.  (Doc. 174-4, p. 2; Doc. 174, p. 8, ¶ 22).  On March 29, 2004, the ARB, through Sherry Hile, rejected the grievance as untimely.  (Doc. 174-4, p. 1; Doc. 174, p. 8, ¶ 22). Hile noted: "Grievance officer's log states it was answered in grievance # 34949.  This office never received your appeal." .  (Doc. 174-4, p. 1).

According to Hile, the grievance was answered and a formal appeal was never received. According to plaintiff, he never received a response to his grievance.  "Prison officials may not take unfair advantage of the exhaustion requirement . . . and a remedy becomes 'unavailable' if prison employees do not respond to a properly filed grievance or otherwise use *affirmative misconduct* to prevent a prisoner from exhausting." *Dole v. Chandler,* 438 F.3d 804, 809 (7th Cir. 2006) (emphasis added) (citing *Lewis v. Washington,* 300 F.3d 829, 833 (7th Cir. 2002); and *Dale v. Lappin,* 376 F.3d 652, 656 (7th Cir. 2004).  Therefore, plaintiff would have the Court find that administrative remedies had become unavailable.  However, plaintiff's and Hile's assertions are not mutually exclusive; the grievance could have been lost in transit to plaintiff. Nevertheless, it must be kept in mind that, because the defendant bears the burden on the exhaustion issue, merely pointing to a lack of evidence in the record is insufficient; rather, they must "establish affirmatively" that the evidence is so one-sided that no reasonable fact-finder could find that plaintiff exhausted or was prevented from exhausting his administrative remedies. *Reserve Supply Corp. v. Owens-Corning Fiberglas Corp.,* 971 F.2d 37, 42 (7th Cir. 1992); *see Branham v. Snow,* 392 F.3d 896, 906-907 (7th Cir. 2004).  As the appellate court stated in *Dole*, "false claims can be minimized by setting up a receipt system for prison mail." *Dole*, 438 F.3d at 812.  Defendants have not carried their burden with respect to showing that the grievance was answered at the institutional level, which compels a finding that remedies were rendered unavailable with respect to the August 13, 2003, grievance.

*If* the District Court does not adopt this Court's conclusion that the August 29, 2003, grievance was defaulted, and the August 13, 2009, grievance did not actually pertain to the issues in Count 3, then a finding that the administrative remedy in the form of the August 13,

2003, grievance should be found to have been exhausted, in that it was unavailable. This Court adheres to the conclusion that the August 13th grievance was inadequate, so whether it is deemed exhausted would be of no import.

### C. Count 8:

Count 8 has been construed by the Court as alleging that defendants Smithson, Anderson, Starkey, Bernard, Dallas, Siepp, Mote, Hile and Walker retaliated against plaintiff in violation of the First Amendment, for litigation, reporting staff misconduct and filing grievances. From plaintiff's perspective, the July 18, 2003, assault at Menard put in motion a series of retaliatory acts, including assaults, false disciplinary charges and the incidents at issue in Counts 3 and 5. (*See* Doc. 1, p. 8, ¶ 22). Plaintiff also links another incident, alleging that on August 26, 2004, defendants Smithson, Bernard, Siepp, and Dallas conducted a shake down of plaintiff's cell, wherein plaintiff's cell was torn apart ("property all over the floor") and it was demanded that plaintiff get rid of all of his legal documentation. ((See Doc. 1, p. 7, ¶ 21). During the August 26, 2004, incident, defendant Smithson allegedly caused small cuts and bruises on plaintiff's wrists while tightening plaintiff's handcuffs. It is further alleged that defendants Mote, Hile, and Walker refused to respond to plaintiff's grievances in an act of retaliation for plaintiff's prior lawsuits against the Illinois Department of Corrections, and in retaliation for state and federal investigations stemming from the incidents outlined in the complaint. (Doc. 1, p. 8, ¶ 22).

Defendants argue that plaintiff failed to exhaust remedies relative to a variety of the incidents connected to Count 8; each will be addressed in turn.

First, relative to the August 26, 2004, cell search by Smithson, defendants assert that plaintiff's September 3, 2004, grievance does not pertain to the allegations that Smithson threw

18

plaintiff's property on the floor or destroyed legal property.   Defendants do not dispute that the

September 3, 2004, grievance was properly pursued through the whole administrative process.

(*See* Doc. 174-6, pp. 1-5; Doc. 174-7, pp. 1-4).  Defendants" argument is specious and a bit

misleading.  The ARB's response reflects that two grievances regarding the happenings of

August 26, 2004, were being addressed.  (Doc. 174-6, p. 1).  One grievance is dated September

3, 2004 (Doc. 174-7, pp. 1-4); a second grievance is dated August 26, 2004 (Doc. 174-6, pp. 3-

6).

Although the institutional level responses and the ARB's response do not specifically

address the allegation that Smithson threw plaintiff's property about the cell, plaintiff's August

26, 2004, grievance details how Smithson, in an act of retaliation for plaintiff reporting his acts

of misconduct and for a pending civil suit, "tore [his] cell apart." (Doc. 174-6, pp. 3-4).  Plaintiff

cannot be faulted for prison officials' failure to address an issue specified in the grievance.

Therefore, this Court concludes plaintiff exhausted his remedies on this point.

Although the  Court's threshold order refers to defendants "destroying plaintiff's legal

documents," no such allegation specifically appears in the complaint.  (Compare Doc. 12, p. 16

and Doc. 1, pp. 7-8).  Rather, the complaint merely describes defendants Smithson and Dallas

shaking down plaintiff's cell and "demanding that the plaintiff get rid of all of his (plaintiffs

[sic]) legal documentation."  (Doc. 1, p. 7).  This Court will assume that the District Court

construed the complaint as alleging the destruction of documents by the defendants because

plaintiff is proceeding *pro se* and in light of the liberal notice pleading standard.

A review of plaintiff's August 26, 2004, grievance reveals that plaintiff described

Smithson and Dallas "demand[ed] and threatened [plaintiff] to get rid of the majority of my legal

19

documents because [he] was not in compliance."  (Doc. 174-6, p. 4).  A state may enact

regulations requiring "factual particularity" in a grievance.  *Strong v. David*, 297 F.3d 646, 649-

650 (7th Cir. 2002).  Illinois has done just that, requiring a grievance to "contain factual details

regarding each aspect of the offender's complaint, including what happened, when, where, and

the name of each person who is subject of or otherwise involved in the complaint."  20 Ill.

Admin. Code § 504.810(b).  Plaintiff's grievance does not make clear that the defendants did

anything more than demand and/or threaten that *plaintiff* get rid of his legal documents.  Because

plaintiff's grievance was too vague regarding the nature of the alleged wrong, this Court

concludes that plaintiff did not exhaust administrative remedies on *this* aspect of Count 8

pertaining to legal documents being destroyed by the defendants.

The second aspect of Count 8 the defendants focus on pertains to whether plaintiff's

grievance(s) allege retaliation by defendants Bernard, Siepp or Dallas.  However, the August 26,

2004, grievance clearly alleges that, as the cell shake down was occurring and each defendant

arrived on the scene, plaintiff explained to Bernard, Siepp and Dallas that Smithson had initiated

the whole process in retaliation for plaintiff reporting Smithson and for civil litigation.  (Doc.

174-6, pp. 3-4).  At the institutional level it was recognized that Smithson, Bernard, Dallas and

Siepp collectively searched plaintiff's cell, and that Smithson allegedly was doing so in

retaliation.  (Doc. 174-6, p. 2).  Therefore, this Court concludes that prison officials recognized

that the retaliatory motive was imputed to the entire group.  Consequently, this Court finds that

the issue of retaliation by Smithson, Bernard, Siepp and Dallas was exhausted.

Third, defendants argue that plaintiff failed to submit a grievance pertaining to the

allegation that, while at Pontiac Correctional Center, plaintiff was continually assaulted and

retaliated against by defendants Smithson, Anderson, Starkey, Bernard, Dallas, Siepp and Mote. Neither plaintiff's August 26 or September 3, 2004 grievances uses verbiage reflecting any sort of overarching, continuous rein of assaults and retaliation.  Rather, multiple specific incidents are described.  Given the specificity requirements of  20 Ill. Admin. Code § 504.810(b), plaintiff's two grievances cannot be found to have properly presented such a broad claim; therefore, this Court concludes that any such claim of retaliation was not exhausted.[3]

The defendants' fourth and final argument regarding the exhaustion of the claims in Count 8 pertains to whether defendants Mote, Hile and Walker refused to respond to grievances as an act of retaliation.  Defendants assert that no grievance was submitted on that topic. Plaintiff's August 26, 2004, grievance states:

> [Walker, Hile and Mote] are fully aware of C/O Smithsons [sic] history and record being plagued with egregious and henious [sic] abuse of inmates.  Yet not once have these officials put forth the effort to thoroughly investigation [sic] and place an end to such abuses. In fact these officials have gone out of their way to conseal [sic] and downplay these altercations because of the liabilities [sic] involved.  Because of such action the I.D.O.C. is plagued with wide spread [sic] racism, corruption and cover ups [sic].
>
>           \* \* \*
>
> It is clear that Warden Mote has sanctioned or at the very least condoned such abuses against me because of my litigations [sic] against the I.D.O.C.

(Doc. 174-6, p. 5).

Plaintiff's assertion regarding Walker, Mote and Hile is far too broad to comport with the specificity requirements of  20 Ill. Admin. Code § 504.810(b).  The institutional response to the

---

[3]This Court observes that, insofar as Count 8 is construed as alleging that the acts alleged in Counts 3 and 5 were retaliatory in nature, this Court has already concluded that Count 3 was not properly exhausted.  Count 5 regarding the conditions of plaintiff's cell was exhausted regarding defendant Anderson <u>and</u> the allegation that Anderson acted in retaliation.  (Doc. 174-5, pp. 3-4).

grievance observes generally that "issues of other staff concealing abuses is [sic] not addressed as no specific incidents are listed." (Doc. 174-6, p. 2). Therefore, this Court concludes that plaintiff has failed to exhaust his administrative remedies relative to the claim in Count 8 that defendants Mote, Hile and Walker refused to respond to grievances as an act of retaliation.

In summary, this Court concludes that plaintiff did exhaust administrative remedies relative to claims in Count 8 relating to Count 5, but not those relating to Count 3 or any overarching retaliatory claim. This Court also concludes plaintiff exhausted administrative remedies regarding his cell being torn apart and the allegation that Smithson, Bernard, Dallas and Siepp did so with a retaliatory motive. However, this Court concludes plaintiff did not exhaust administrative remedies regarding the alleged destruction of his legal documents, or relative to allegations that Walker Mote and Hile refused to respond to grievances out of retaliation. Plaintiff should be permitted to proceed on all of the issues that were exhausted; issues not exhausted should be dismissed without prejudice.

### 2. Summary Judgment

Summary judgment is proper where the pleadings and affidavits, if any, "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986). The movant bears the burden of establishing the absence of fact issues and entitlement to judgment as a matter of law. *Santaella v. Metro. Life Inc. Co.,* 123 F.3d 456, 461 (7th Cir. 1997) (citing *Celotex,* 477 U.S. at 323).

In determining the existence of a genuine dispute of material fact, the Court construes all facts in the light most favorable to the nonmoving party and draws all reasonable inferences in

favor of that party.  *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255 (1986);

*Regensburger v. China Adoption Consultants, Ltd.,* 138 F.3d 1201, 1205 (7th Cir. 1998).  If the

moving party meets its burden, the nonmoving party has the burden "to go beyond the pleadings

and affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of

material fact which requires trial."  *Borello v. Allison,* 446 F.3d 742, 748 (7th Cir. 2006) (internal

quotation marks and citations omitted); *Celotex,* 477 U.S. at 322-26; *Johnson v. City of Fort

Wayne,* 91 F.3d 922, 931 (7th Cir. 1996).  If the evidence is merely colorable, or is not

sufficiently probative, summary judgment may be granted." *Anderson,* 477 U.S. at 249-250

(citations omitted); *accord Strazenski v. City of Elkhart,* 87 F.3d 872, 880 (7th Cir. 1996); *Tolle v.

Carroll Touch, Inc.,* 23 F.3d 174, 178 (7th Cir. 1994). "[The non-movant's] own uncorroborated

testimony is insufficient to defeat a motion for summary judgment." *Weeks v. Samsung Heavy

Indus. Co.,* 126 F.3d 926, 939 (7th Cir. 1997).  Further, the non-moving party's own subjective

belief does not create a genuine issue of material fact.  *Chiaramonte v. Fashion Bed Group, Inc.,*

129 F.3d 391, 401 (7th Cir. 1997).  However, when all the Court has before it are the parties'

diametrically opposed statements on the critical and ultimate issues of fact, the Court must pass

the case to the next phase of litigation.

### A.  Count 5

Count 5 alleges that, while plaintiff was housed at Pontiac Correctional Center, defendant

Anderson imposed cruel and unusual conditions of confinement upon plaintiff, in violation of the

Eighth Amendment.  On September 5, 2003, C/O Anderson allegedly moved plaintiff into a cell

that was "covered in excrement and reeked an unb[e]arable stench and had a def[e]cated and

urine stained mattress."  Plaintiff asked for a new mattress and that the cell be cleaned or that he

be provided cleaning supplies, but his requests were denied.  Despite numerous grievances, plaintiff was forced to endure these conditions for two months.

Based on plaintiff's deposition testimony, defendant Anderson argues that because plaintiff admits that he cleaned his cell the same day with soap and water, removing most of the excrement, there is no viable constitutional violation.  Anderson further argues that subjecting plaintiff to the lingering smell is not a recognized constitutional violation, therefore he is entitled to qualified immunity.  Similarly, Anderson contends a urine and feces stained mattress falls short of the objective standard of seriousness required of a constitutional claim.

Plaintiff objects to the use of his deposition testimony.  The Court has previously rejected plaintiff's objections to the taking of his deposition and the transcript.  (Docs. 164 and 188).  Therefore, those issues will not be revisited, and plaintiff's deposition testimony will be considered by the Court.

In his deposition, plaintiff does state that he cleaned the filthy cell the same day he was moved into it, using a t-shirt and bar soap.  (Doc. 168-3, pp. 8 and 12-13).  According to plaintiff, he was able to clean "most" of the excrement off the walls, but the smell remained for the two months he was in the cell.  (Doc. 168-3, pp. 8 and 13).  Plaintiff described the lingering smell as being so powerful that even repeated cleanings did nothing, and even covering his face did no good.  (Doc. 168-3, pp. 13-14).

The Eighth Amendment protects an inmate from conditions of confinement that are health threats; it does not shield him from conditions that cause mere discomfort. *See Hunt v. Reynolds,* 974 F.2d 734, 735 (6th Cir.1992).  The conditions of an inmate's confinement may constitute cruel and unusual punishment in violation of the Eighth Amendment, which applies to

24

the States through the Fourteenth Amendment.  *See Wilson v. Seiter*, 501 U.S. 294 (1991).  In order to establish that a condition of confinement violates the Eighth Amendment, a two part test must be satisfied.  First, an objective determination must be made that the conditions the inmate was required to endure exceeded contemporary bounds of decency; second, a subjective determination must be made that the officials acted with a sufficiently culpable state of mind.  *See Wilson*, 501 U.S. at 298; *see also Lunsford v. Bennett*, 17 F.3d 1574, 1579 (7th Cir. 1994).  Put another way, an inmate must be deprived of the "minimal civilized measure of life's necessities" (*Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)), and the prison officials must have acted "wantonly," meaning that they acted with deliberate indifference (*Lunsford*, 17 F.3d at 1579).

Defendant does not argue that excrement does <u>not</u> pose a health hazard.  Rather, Anderson pushes the idea that the problem was eliminated (no pun intended).  The flaw in the argument is that plaintiff testified that he was unable to clean <u>all</u> of the excrement off the walls, and his mattress.  Therefore, a question of material fact remains regarding whether what remained was sufficient to constitute a constitutional violation.  Furthermore, plaintiff testified that the dirty mattress remained in his cell.  (Doc. 168-3, p. 12).  *See, e.g., Jackson v. Duckworth,* 955 F.2d 21, 22 (7th Cir. 1992) (filth, inadequate plumbing, pests, <u>constant smells of human waste</u>, poor lighting, inadequate heating, unfit drinking water, <u>dirty bedding</u>, no toilet paper, rusted out toilets, broken windows); *Jamison-Bey v. Thieret,* 867 F.2d 1046, 1046-1047 (7th Cir.1989) (no cleaning supplies, filth, pests, improper ventilation, exercise deprivation).

Defendant argues that a urine and feces stained mattress falls short of the objective standard of seriousness required of a constitutional claim. However, *Jackson v. Duckworth* obviously undercuts that argument.

Defendant asserts that the lingering smell is not a recognized constitutional violation, therefore he is entitled to qualified immunity.  Qualified immunity shields officers from liability for civil damages where "their conduct does not violate clearly established statutory or

constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982).  Again, *Jackson v. Duckworth* held that the constant smell of human waste can establish an Eighth Amendment violation, but that ruling cannot be made on the record at bar.  In this case, certain facts still need to be fleshed out, so qualified immunity may be applicable.

Therefore, defendant is not entitled to summary judgment on Count 5.

**B.  Count 8**

It is well established that prison officials violate the Constitution when they retaliate against a prisoner for filing grievances or initiating lawsuits. *Bounds v. Smith,* 430 U.S. 817, 821 (1977); *Walker v. Thompson,* 288 F.3d 1005, 10008-1009 (7th Cir. 2002).  To establish a prima facie case of First Amendment retaliation, a plaintiff must demonstrate that (1) the plaintiff engaged in constitutionally protected speech; (2) the plaintiff suffered a deprivation likely to deter the free exercise of the plaintiff's First Amendment rights; and (3) the plaintiff's speech was a "but-for" cause of the defendant's retaliation. *Massey v. Johnson,* 457 F.3d 711, 716 (7th Cir. 2006) (describing the elements of First Amendment retaliation in the employment context). The causal standard for such a claim was recently clarified in *Fairley v. Andrews,* 578 F.3d 518, 525-526 (7th Cir. 2009) (recognizing that the United States Supreme Court has rejected the former standard that the plaintiff's speech could be a "motivating" factor; under the new standard, unless a statute provides otherwise, the plaintiff must establish "but-for" causation in all suits under federal law) (citing *Gross v. FBL Fin. Servs., Inc.,* --- U.S. ----, 129 S.Ct. 2343, 2351 (2009)).

**1.  Defendants Smithson, Bernard, Siepp and Dallas**

Defendants argue that plaintiff has failed to produce evidence that retaliation was a substantial motivating factor in their shaking down his cell on August 26, 2004.   As noted above, the more difficult "but-for" standard is actually applicable.

Defendants do not offer their own affidavits indicating that they did not act with a

26

retaliatory motive.  However, a review of plaintiff's deposition testimony reveals that he stated under oath that Smithson, Bernard, Siepp and Dallas arrived at his cell, and that he said aloud that Smithson was only initiating the shake down because plaintiff was pursuing litigation against Smithson. (Doc. 168-3, pp. 19 and 22).  At this juncture, plaintiff's testimony carries the day and questions of credibility and pretext will have to be decided by the jury.

### 2.  Defendants Smithson, Anderson, Starkey, Bernard, Dallas and Siepp

Defendants Smithson, Anderson, Starkey, Bernard, Dallas and Siepp argue that plaintiff has failed to specify incidents that would constitute his claim that they *continually* assaulted and retaliated against him.  As fully discussed above relative to the issue of exhaustion, the only claims that fall within the "broad" Count 8 retaliation claim are: (1) the incident at issue in Count 3 involving Smithson, Anderson and Starkey; (2) the incident at issue in Count 5 involving defendant Anderson; and (3) the incident included in Count 8 pertaining to defendants Smithson, Bernard, Dallas and Siepp for the cell shakedown and cuffing.  Put succinctly, plaintiff does not dispute that there are any issues outside of those claims that were a result of retaliation.  The defendants' argument is premised upon a misinterpretation of the complaint– a misinterpretation or overly broad reading of the complaint also made by the Court in its threshold order.  This Court recommends clarifying the limited basis for the retaliation claims in Count 8.

### 3.  Defendants Walker, Mote and Hile

According to the affidavit of Terri Anderson, Manager of the Office of Inmate Issues, Director Walker did not receive, review or respond to inmate grievances, nor did he personally sign the grievance responses; rather, the ARB and the Director's designee were tasked with those duties.  (Doc. 168-4, p. 1; *see also* Doc. 168-1, p. 2 (Affidavit of Hile)).  Plaintiff does not counter that evidence.  *Wolf-Lillie v. Sonquist*, 699 F.2d 864, 869 (7th Cir.1983), stressed that "Section 1983 creates a cause of action based upon personal liability and predicated upon fault. An individual cannot be held liable in a [Section] 1983 action unless he caused or participated in an alleged constitutional deprivation." *See also McBride v. Soos*, 679 F.2d 1223, 1227 (7th Cir.

1982).  Accordingly, liability under Section 1983 cannot be based on the doctrine of *respondeat superior*.  *See Sanville v. McCaughtry*, 266 F.3d 724, 740 (7th Cir. 2001).  "However, a defendant's direct participation in the deprivation is not required.  An official satisfies the personal responsibility requirement of [S]ection 1983 if she acts or fails to act with a deliberate or reckless disregard of plaintiff's constitutional rights, or if the conduct causing the constitutional deprivation occurs at her direction or with her knowledge and consent."  *Rascon v. Hardiman*, 803 F.2d 269, 273-274 (7th Cir. 1986).  Plaintiff has offered nothing to substantiate any personal involvement by Director Walker.  Therefore, this Court concludes that Walker is entitled to summary judgment on Count 8, which would also lead to his dismissal as a defendant in this action, as there are no other claims against him.

Relative to defendants Mote and Hile, in his deposition plaintiff indicated that the grievances he was alleging Mote and Hile did not answer were those "stipulated in the complaints."  (Doc. 168-3, p. 26).   A review of the complaint indicates plaintiff is referring to the August 13 and August 29, 2003, grievances.  (Doc. 1-1, p. 1).

As discussed in detail above relative to Count 3, plaintiff contends he never received a response to the August 13, 2003, grievance.  There is conflicting evidence regarding whether the grievance was ever received, or received and denied at he institutional level.  On February 15, 2004 (long after the 60-day period allotted for review of the grievance had passed), plaintiff inquired about the status of the grievance and received a memo dated March 16, 2004, indicating the August 13, 2003, grievance had <u>not</u> been timely submitted.  (Doc. 174-4, p. 4; Doc. 174, p. 8, ¶ 22).  On March 18, 2004, plaintiff submitted all of his documentation regarding the August 13, 2003, grievance to the ARB.  (Doc. 174-4, p. 2; Doc. 174, p. 8, ¶ 22).  On March 29, 2004, the ARB, through Sherry Hile, noted: "Grievance officer's log states it was answered in grievance # 34949.  This office never received your appeal." (Doc. 174-4, p. 1).  Defendant Mote's assertion to the contrary, the evidence suggests Warden Mote did pass on the grievance.  According to Hile, the August 13th grievance was completed at the institutional level, but a formal appeal was

never received.  Without additional evidence from either side regarding the submission and processing of the August 13, 2003, grievance, no further evaluation is possible relative to defendants  Mote and Hile, thereby precluding summary judgment.

With respect to the August 29, 2003, grievance, Mote merely concurred with the grievance officer's recommendation to deny the grievance on its merits.  (Doc. 174-2, p. 12). Mote has not provided his affidavit regarding his *mens rea* or his belief that the grievance officer's decision was correct.  Therefore, defendant Mote has not met his burden for obtaining summary judgment relative to the August 29, 2003, grievance.

The August 29, 2003, grievance was either: (1) never received by Hile (Doc. 174-2, p. 3); (2) received as evidenced by a certified mail receipt (Doc. 174-2, p. 5); or (3) was not received until December 2003 and was denied by Melody Ford, not Hile (Doc. 174-2, p. 1).  The many interdependent variables and credibility determinations preclude summary judgment relative to Hile and the August 29, 2003, grievance.

### Recommendation

For the aforestated reasons, it is the recommendation of this Court that the defendants' motion for summary judgment (Doc. 168) be granted in part and denied in part.  In summary, this Court recommends:

1.      Count 1, the excessive force claim against defendant Mitchell, should be dismissed without prejudice due to plaintiff's failure to exhaust administrative remedies; as a result, Mitchell would be entitled to dismissal as a defendant from this action;

2.      Count 3, the July 18, 2003,  excessive force claim against defendants Smithson, Anderson and Starkey, should be dismissed without prejudice, due to plaintiff's failure to exhaust administrative remedies via either his August 13, 2003, grievance or his August 29, 2003, grievance;

3.      Count 5, the conditions of confinement claim against defendant Anderson,

proceed, as it is undisputed that plaintiff did exhaust administrative remedies;

4.      Count 8, alleging a variety of retaliation claims against defendants Smithson, Anderson, Starkey, Bernard, Dallas, Siepp Mote, Hile and Walker should proceed in part and be dismissed in part due to plaintiff's failure to exhaust administrative remedies:

      A.      Plaintiff exhausted remedies relative to the claim that on August 26, 2004, Smithson, Bernard, Dallas and Siepp tore plaintiff's cell apart as retaliation, so that claim should proceed;

      B.      Plaintiff has not exhausted administrative remedies relative to any claim that on August 26, 2004, Smithson, Bernard, Dallas and Siepp destroyed legal documents, so that aspect of Count 8 should be dismissed without prejudice;

      C.      Plaintiff has not exhausted administrative remedies relative to the claim that Mote, Hile and Walker retaliated by refusing to respond to grievances, so that aspect of Count 8 should be dismissed without prejudice, which would also result in the dismissal of Mote, Hile and Walker as defendants in this action;

      D.      Plaintiff has exhausted administrative remedies relative to the claim that Smithson, Bernard, Dallas and Siepp acted in retaliation with respect to the August 26, 2004, incident, so that claim should proceed;

      E.      Plaintiff has not exhausted administrative remedies relative to his claim that defendants Smithson, Anderson and Starkey were retaliating when they used excessive force as alleged in Count 3, so that aspect of Count 8 should be dismissed without prejudice;

      F.      Plaintiff has exhausted remedies relative to alleged retaliation by

Anderson relative to the conditions of confinement claim in Count 5, so that aspect of Count 8 should proceed;

5.      Defendant Anderson's motion for summary judgment should be denied relative to Count 5, and the included allegations regarding dirty cell walls, a dirty mattress and a continuous stench should proceed;

6.      Defendants Smithson, Bernard, Dallas and Siepp should be denied summary judgment relative to the aspect of Count 8 alleging that they were retaliating when plaintiff was cuffed and his cell search on August 26, 2004, and that claim should proceed;

7.       In the event the District Court does not conclude that plaintiff failed to exhaust administrative remedies relative to the retaliation claims against them in Count 8:

A.      Walker should be granted summary judgment because he did not have the requisite personal involvement;

B.      Mote and Hile should be denied summary judgment relative to the claim in Count 8 that they did not respond to his August 13 and August 29, 2003, grievance, and those retaliation claims should proceed; and

C.      The Court should clarify that the only claims that fall within the Count 8 retaliation claim are: (1) the incident at issue in Count 3 involving Smithson, Anderson and Starkey; (2) the incident at issue in Count 5 involving defendant Anderson; and (3) the incident included in Count 8 pertaining to defendants Smithson, Bernard, Dallas and Siepp for the cell shakedown and cuffing; and

8.      If this Court's recommendations are adopted, Counts 1 and 3 would be dismissed without prejudice, and defendants Mitchell and Walker would be dismissed from the action.

**DATED:  January 25, 2010**

**s/ Clifford J. Proud**
**CLIFFORD J. PROUD**
**U. S. MAGISTRATE JUDGE**


### Notice of Response Deadline

In accordance with 28 U.S.C. § 636(b) and Federal Rule of Civil Procedure 6(d), the parties shall file (meaning receipt by the Clerk of Court) any objections to this report and recommendation on or before **February 11, 2010**.  No extensions will be granted.