IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| FABIAN SANTIAGO, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | Case No. 05-CV-0512-MJR-CJP |
| C/O SMITHSON, C/O ANDERSON, | ) | |
| C/O STARKEY, C/O BERNARD, LT. | ) | |
| DALLAS, LT. SIEPP, WARDEN MOTE, | ) | |
| SHERRY HILE, DIRECTOR WALKER, | ) | |
| and J. MITCHELL, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

**REAGAN, District Judge:**

Fabian Santiago, a prisoner, has sued several employees of the Illinois Department of Corrections (IDOC), including the former director of the department, Roger Walker, Jr. Defendant Corrections Officer Jeffrey Mitchell worked at Menard Correctional Center. Corrections Officers Robert Smithson, Jeremy Anderson, Joel Starkey, Benny Dallas, Paul Siepp and Warden Stephen Mote worked at Pontiac Correctional Center. Defendant Sherry Hile (now Benton) was a member of the IDOC Administrative Review Board (ARB). After threshold review, Counts 1, 3, 5 and 8 remain, alleging that the defendants violated Santiago's rights under the First and Eighth Amendments and are accordingly liable under 42 U.S.C. § 1983. The factual allegations are more adequately summed up in Magistrate Judge Clifford J. Proud's Report to this Court (Doc. 213 at 2–4). Judge Proud submitted that Report on the defendants' joint motion for summary judgment (Doc. 168), and the Report includes a recommended disposition of the motion.

Santiago submitted an objection filed 15 days after the Report was served on him by mail (Doc. 216), meaning that his objection was timely. *See* Fed. R. Civ. P. 72(b) (requiring objections to a magistrate judge's report to be filed within 14 days of service); R. 6(d) (allowing an additional three

days when service is accomplished by mail). Because timely objections were filed, the Court must

review *de novo* those portions of the report to which specific objections have been made. 28 U.S.C.

§ 636(b)(1)(B) (2006); Fed. R. Civ. P. 72(b); S.D. Ill. R. 73.1(b); *Govas v. Chalmers*, 965 F.2d 298, 301

(7th Cir. 1992). The Court may accept, reject or modify the recommended disposition and may, if

necessary, recommit the matter to the magistrate judge with instructions. Fed. R. Civ. P. 72(b); S.D.

Ill. R. 73.1(b); *Willis v. Caterpillar, Inc.*, 199 F.3d 902, 904 (7th Cir. 1999). Finding Santiago's

objections without merit, this Court will adopt the recommendations of Judge Proud. For reasons

detailed below, Santiago's case is dismissed without prejudice and with leave to reinstate once the

authority of the Court is vindicated.

## Summary Judgment Standard

Summary judgment is appropriate where the pleadings, discovery and disclosure materials on

file and any affidavits show that there is no genuine issue of material fact and that the moving party

is entitled to judgment as a matter of law. *Estate of Suskovich v. Anthem Health Plans of Va., Inc.*, 553

F.3d 559, 563 (7th Cir. 2009) (citing Fed. R. Civ. P. 56(c)); *accord Breneisen v. Motorola, Inc.*, 512 F.3d

972 (7th Cir. 2008); *Levy v. Minn. Life Ins. Co.*, 517 F.3d 519 (7th Cir. 2008).

In ruling on a summary judgment motion, the Court construes all facts and reasonable

inferences in the light most favorable to the non-moving party. *Lloyd v. Swifty Transp., Inc.*, 552 F.3d

594, 600 (7th Cir. 2009); *TAS Distrib. Co. v. Cummins Engine Co.*, 491 F.3d 625, 630 (7th Cir. 2007);

*Reynolds v. Jamison*, 488 F.3d 756, 764 (7th Cir. 2007).

The non-moving party cannot rest on its pleadings, though; to avoid summary judgment, the

non-moving party must provide evidence on which a reasonable fact-finder could find in favor of

the non-moving party. *Maclin v. SBC Ameritech*, 520 F.3d 781, 786 (7th Cir. 2008). As the Seventh

Circuit recently explained:

> [T]he non-moving party must submit evidence that there is a genuine
> issue for trial. The existence of merely a scintilla of evidence in

support of the non-moving party's position is insufficient; there must
be evidence on which the jury could reasonably find for the non-
moving party.

*Giant Screen Sports v. Canadian Imperial Bank of Commerce*, 553 F.3d 527, 531–32 (7th Cir. 2009) (citation

omitted) (citing Fed. R. Civ. P. 56(e); *Ptasznik v. St. Joseph Hosp.*, 464 F.3d 691, 694 (7th Cir. 2006)).

## Analysis

Santiago's objections can be placed under four distinct headings. He objects to the

magistrate judge's conclusions that (1) he did not exhaust administrative remedies on the Eighth

Amendment excessive force claim against Mitchell (Count 1) (Pltf.'s Mot. ¶¶ 1–13); (2) he did not

exhaust administrative remedies against Smithson, Dallas, Bernard and Siepp for destroying legal

documents (part of Count 8) (*id.* ¶ 14); (3) he did not exhaust grievances against Walker, Mote and

Hile (part of Count 8) (*id.* ¶¶ 16–23); and (4) there is no evidence that Walker participated in any

First Amendment retaliation (part of Count 8) (*id.* ¶ 15).

The bulk of the objections relate to Congress's requirement that a prisoner exhaust

administrative remedies before bringing suit regarding conditions of confinement. *See* 42 U.S.C.

§ 1997e(a) (2006) ("No action shall be brought with respect to prison conditions under section 1983

of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional

facility until such administrative remedies as are available are exhausted."). If a prisoner does not

exhaust the administrative remedies, the defendants in the suit may use that failure against the

prisoner, but to do so they must assert the failure to exhaust as an affirmative defense and bear the

burden of proof. *Jones v. Bock*, 549 U.S. 199, 211–17 (2007); *Pavey v. Conley*, 544 F.3d 739, 740–41 (7th

Cir. 2008) (citing *Jones*, 549 U.S. 199). This affirmative defense, however, is not entitled to a jury trial;

it is instead tried by the Court at this juncture. *See Pavey*, 544 F.3d at 741 (comparing the failure-to-

exhaust defense to other defenses and determining that the Court decides the issue, not the jury). If

material issues of fact exist on the question of exhaustion of remedies, the Court is to hold a hearing

on the question of exhaustion. *Id.* at 742. If, after a hearing, the Court determines that the prisoner exhausted his administrative remedies, then the case goes forward. *See id.* If the prisoner failed to exhaust but the failure was innocent "as where prison officials prevent a prisoner from exhausting his remedies," then the prisoner is given another chance to exhaust. *Id.* Otherwise, the prisoner's unexhausted claims are dismissed. *Id.*

**Eighth Amendment Excessive Force**

The excessive force claim stems from an alleged incident on July 18, 2003, in which Mitchell assaulted Santiago while he was at Menard Correctional Center. Viewing the evidence regarding the submission of the grievance in the light most favorable to Santiago, this incident was included in a grievance submitted on August 29, 2003, to the Pontiac grievance officer along with two other alleged incidents occurring on July 24–25, 2003. The July 24 and 25 incidents occurred at Pontiac, subsequent to Santiago's transfer from Menard. The Pontiac grievance officer addressed the Pontiac issues but did not address the Menard issues, and correctly so. Inmates housed at one facility that grieve about an incident at another facility must submit that grievance directly to the ARB. Ill. Admin. Code tit. 20, § 504.870(a)(4). Instead of submitting the Menard grievance to the ARB, Santiago erroneously submitted the grievance to the *Pontiac* grievance officer.

The Pontiac grievance sequence was completed on September 25, 2003, when the Pontiac Chief Administrative Officer concurred in the denial of the grievances. Santiago asserts, by affidavit, that he submitted the denied grievance to the ARB on October 3, 2003. He argues that this submission was effective to get the Menard grievance before the board because the two concurrently-submitted Pontiac events were continuing violations of the July 18, 2003, event. He argues, then, that the last date of the continuing violation (July 25, 2003) should be the date from

4

which the time for submitting a grievance runs. Even assuming, without deciding, that the "continuing violation" doctrine also applies to exhausting administrative remedies,[1] this argument fails. The time frame for submitting a grievance is 60 days. Ill. Admin. Code tit. 20, § 504.810(a). The last day of the "continuing violation" was July 25, 2003, and 60 days later is September 23, 2003. October 3 is simply too late.

Because October 3 was, as a matter of law, too late to submit a grievance that should have been submitted by September 23,[2] the Court need not address the further arguments regarding whether Santiago actually submitted the grievance on October 3. Even if he did, he would have been too late. As such, the alleged July 18, 2003, event is procedurally defaulted, meaning that Judge Proud was correct to recommend the dismissal of the Eighth Amendment excessive force claim (Count 1). Santiago's objection is overruled.

**Destruction of Legal Documents**

Santiago alleges as part of Count 8 that Smithson and Dallas destroyed his legal documents on August 26, 2004, in retaliation for his litigiousness. He also alleges that Bernard and Siepp were present and did nothing to stop Smithson and Dallas from destroying his documents. He argues that this incident was properly presented in a grievance submitted on the day of the incident, August 26, 2004. Judge Proud disagreed in his report, and Santiago objects.

---

[1] The principle that Santiago cites is usually known as the "continuing violation" doctrine, which permits the holding in abeyance of the statute of limitations until the last injury of the "continuing violation" occurs. *See, e.g.*, *Sandutch v. Muroski*, 684 F.2d 252, 254 (3d Cir. 1982); *Feltmeier v. Feltmeier*, 798 N.E.2d 75, 89 (Ill. 2003). The main problem with applying the "continuing violation" rule to this case is that the rule applies to statutes of limitation, that is, the time limit for bringing suit, not the time limit for grieving administratively.

[2] Again, for the sake of argument, the Court is assuming, without deciding, that the continuing violation doctrine can be applied in this case.

The fact that a grievance was submitted on August 26 is not in dispute, but the parties disagree as to what, exactly, was grieved on that date. The only indication with respect to legal documents in the grievance text is the following:

> Lt. Dallas then started to demand and threaten me to get rid of the majority of all of my legal documents because I was not in compliance. I then told this Lt. . . . that I needed to have immediate access to my legal documents because of various pending litigation that I had before the courts.

(Doc. 174-6 at 4.) The text then notes that "Lt. Dallas['s] fixation with eliminating the majority of all of my legal documentation clearly supports" the proposition that prison officials were affecting his access to the courts. (*Id.*)

Santiago argues that the text of the grievance clearly implies that the correctional officers destroyed the legal documents on August 26 in retaliation for his exercising his First Amendment rights. If Santiago's grievance implies anything at all, the implication is far from clear because Santiago's grievance is ambiguous. "Lt. Dallas then started to demand and threaten me to get rid . . . of my legal documents" could have at least two meanings: Dallas threatened and demanded *for Santiago* to get rid of the legal documents, or Dallas threatened and demanded *to Santiago* to get rid of the legal documents. The first construction is a threat or demand that Santiago himself get rid of the legal documents, while the second construction is a threat or demand made to Santiago that Dallas would get rid of the documents. Neither construction implies that Dallas's "fixation" was ever accomplished. The text simply does not imply that documents were destroyed.

Because nothing in the grievance indicates that the documents were in fact destroyed, the grievance fails Illinois's requirement for "factual particularity." *See* Ill. Admin. Code tit. 20, § 504.810(b) ("The grievance shall contain factual details regarding each aspect of the offender's complaint, including what happened, when, where, and the name of each person who is subject or

otherwise involved in the complaint."). The Seventh Circuit has held that states are allowed to require factual particularity in their grievance procedures for prisoners:

> Very few courts have addressed what things an administrative grievance must contain. . . . Courts—and presumably litigants too—have assumed that the general objectives that inspired [42 U.S.C.] § 1997e(a) also determine how a prisoner must go about exhausting state remedies. . . .
>
> Section 1997e(a) does not delineate the procedures prisoners must follow. We have held that the rules come from the prison grievance systems themselves—state law for state prisons, federal administrative law for federal prisons. We wrote in *Pozo v. McCaughtry* that "prisoner[s] must file complaints and appeals in the place, and at the time, the prison's administrative rules require." Now we add the logical extension that the grievances must contain the sort of information that the administrative system requires. Some states (Illinois is an example) require fact-pleading in litigation, and these might be expected to require factual detail in administrative grievances too. They may use the old code-pleading system under which the complaint must identify each "element" of a "cause of action."

*Strong v. David*, 297 F.3d 646, 649 (7th Cir. 2002) (citation omitted). Because Santiago's grievance did not comply with the Illinois requirement for factual particularity, his First Amendment retaliation claim regarding the alleged destruction of his legal documents was not exhausted. Judge Proud was correct to recommend dismissal of this part of Count 8, so Santiago's objection is overruled.

**Exhaustion of Grievances Against Walker, Hile and Mote**

Santiago also alleges in Count 8 that defendants Walker, Hile and Mote refused to respond to grievances in retaliation for engaging in litigation, as is his right under the First Amendment. He argues, just like the previous objection, that the refusal to respond to grievances was properly pursued in the August 26, 2004 grievance. Judge Proud disagreed in his report, and Santiago objects.

Again, there is no factual dispute that the August 26, 2004, grievance was submitted and that it contained the following relating to Walker, Hile and Mote:

> Director Walker, [Ms.] Sherry Hile, Warden Mote, the grievance officers and my assigned counselor are fully aware of c/o

> Smithson[']s history and record being plagued with egregious and he[in]ous abuse of inmates. Yet not once have these officials put forth the effort to thoroughly investigat[e] and place an end to such abuses. In fact these officials have gone out of their way to con[ceal] and downplay these altercations because of the liabilities involved. Because of such action the I.D.O.C. is plagued with wide[]spread racism, corruption and cover[-]ups.
>
> There is a Federal inquiry being conducted by law enforcement into the brutal assaults which took place against me at the Menard and Pontaic C.C. in which c/o Smithson is directly [a part] of. These factors in themselves demonstrate that c/o Smithson has no business having contact with me in the first place. It is clear that Warden Mote has sanctioned or at the very least condoned such abuses against me because of my litigations against the I.D.O.C.

(Doc. 174-6 at 5.)

Although this text indicates "the name of each person who is subject or otherwise involved in the complaint," and in very broad strokes includes "what happened," the text still needs to include "when [and] where." Ill. Admin. Code. tit. 20, § 504.810(b). The text of the grievance does not indicate when and where this supposed failure to investigate occurred, or when and where the sanctioning/condoning of the abuses took place. Because, as stated before, Illinois requires fact-pleading with respect to its grievance system, Santiago did not properly grieve this particular issue through the administrative process. *Strong*, 297 F.3d at 646.

Santiago tries to avoid this conclusion in his objection by arguing about the facts, discovery and the legal merits of the claim. The Court need not reach these arguments, as none of them relate to the conclusion that Santiago did not submit a proper grievance regarding Walker, Hile and Mote. Judge Proud was correct to dismiss this portion of Count 8, and Santiago's objection is overruled.

**Participation of Walker**

Finally, Santiago objects to the portion of Judge Proud's conclusion that there was no evidence that Walker participated in the conduct about which Santiago complains. Having concluded that Santiago failed to exhaust any grievance against Walker, no further analysis is

8

required—Walker is gone from the suit. Similarly, Judge Proud's *alternate* recommendation to grant summary judgment in favor of Walker (Doc. 213 at 31) does not have to be analyzed. Accordingly, Santiago's objection is overruled.

## Vindication of the Court's Authority

At Doc. 120, Santiago engages in a scurrilous tirade against Magistrate Judge Proud and the undersigned District Judge. He refers to Magistrate Judge Proud as "the Detestable" and the undersigned as "the Corruptible." A non-exhaustive list of other improper comments and statements in that document includes:

- Referring to "this Klue Klux Klan court room"

- Referring to this court as "racist and abominable"

- Referring to the assigned judges as "assholes"

- Calling the Court "corrupt"

- Referring to the assigned judges as "dumbassess"

- Referring to the assigned judges as "cross burning hillbillies"

- Using vile language, including the "F" word

Santiago's writings evidence a total lack of respect for the authority of the Court and will not be countenanced. Statements that do not evidence any impairment of the judicial function, despite their "tactlessness," do not warrant the application of sanctions. But Santiago's vile diatribe does not fall into this category. Santiago's right to disagree with the Court is easily acknowledged, but it must be done respectfully. Invectives are not argument.

This Court has the inherent power to dismiss an action when a litigant has, as in this situation, "willfully abused the judicial process or otherwise conducted litigation in bad faith." *Salmeron v. Enter. Recovery Sys., Inc.*, 579 F.3d 787, 793 (7th Cir. 2009) (citing *Chambers v. NASCO, Inc.*,

501 U.S. 32, 44-45 (1991); *Maynard v. Nygren*, 332 F.3d 462, 470-71 (7th Cir. 2003)); *see also Montano v. City of Chicago*, 535 F.3d 558, 563 (7th Cir. 2008); *Jimenez v. Madison Area Technical Coll.*, 321 F.3d 652, 655–57 (7th Cir. 2003). Statements which have the effect of disrupting a judicial proceeding have an extremely high risk of imminently obstructing the fair administration of justice and warrant sanctions. *Bridges v. California*, 314 U.S. 352 (1941); *see also In re Snyder*, 734 F.2d 334 (8th Cir. 1984).

In accordance with Federal Rule of Civil Procedure 11(c)(2) it is proper for the trial court to impose a severe sanction where the sanction is sufficient to deter repetition of the misconduct or to deter similar conduct by third parties. Dismissal of a lawsuit is an extreme sanction, one that must be exercised with great restraint. But the Court has a duty to safeguard the integrity of judicial proceedings, and dismissal is warranted where needed to sanction conduct that abuses the judicial process.

The docket sheet in this case spans 211 entries through March 11, 2010, and there are other ill-advised writings that plaintiff must recant before his case is reinstated. The Court has neither the time nor inclination to scour the record and point out each of them. That is Santiago's obligation.

The remainder of Santiago's case is dismissed without prejudice and with leave to reinstate upon filing a motion entitled "Motion Disavowing Prior Ill-Advised Language and Request to Reinstate Case." Santiago must *genuinely* recant each and every obscene word and phrase, scurrilous remark, insulting name and abusive comment in the record in this case within 30 days of the date of this order. A general, broad recantation will not suffice. It must be specific and heartfelt. The case will then be reinstated, maintaining its current place on the Court's docket.[3] Santiago will not be required to pay an additional filing fee. Failure to comply will result in the dismissal being converted

---

[3] No additional service or pleadings will be required and the case will proceed just as though it were never dismissed and this dismissal will not give rise to a statute of limitations defense.

to one with prejudice. No extensions of the deadline will be granted absent extraordinary and exceptional circumstances.

Attorney Relihan, who was appointed by the Court to represent Santiago, has <u>no</u> obligation to see that this order meets compliance.[4] Relihan was appointed late in the day, mainly for purposes of trial.

While the Court considered a rule to show cause as an alternative to dismissal without prejudice,[5] that course would not send a strong enough message to Santiago and others. In the instant case, the undersigned Judge finds that no other sanction will protect the integrity of the judicial system/process, reprimand Santiago, and deter others from similar conduct. *Salmeron*, 579 F.3d at 797. A monetary sanction would have no practical impact on Santiago, who is serving a lengthy sentence and is indigent. Dismissal with prejudice is not warranted at this juncture, especially since the undersigned did not address Santiago's indiscretions as timely as it should have.

For all these reasons, based on Santiago's bad faith conduct in connection with Doc. 120, and in an exercise of the Court's inherent power to impose sanctions based on abuse of the judicial process, this action is dismissed without prejudice and with leave to reinstate on the aforestated terms.

## Conclusion

Finding Santiago's objections without merit, the Court **OVERRULES** the objections (Doc. 216) and **ADOPTS** recommendations 1–6 and 8 of Judge Proud's Report in their entirety

---

[4] Of course Relihan may proceed as he sees fit.

[5] The Court is cognizant of the decision in *Gabriel v. Hamlin*, 514 F.3d 734, 738-39 (7th Cir. 2008), but the basis for the Court's dismissal, i.e., Santiago's conduct, clearly is distinguishable from the ground on which the Court relied in *Gabriel* and, unlike *Gabriel*, the dismissal in the instant case is without prejudice and may be vacated by Santiago's compliance with the terms of this order. Whether this case is reinstated is up to Santiago.

(Doc. 213 at 29–31). As recommendation 7 was an alternative recommendation which the Court did not have to reach, the Court **DECLINES TO ADOPT** recommendation 7. As such, the Court **GRANTS IN PART AND DENIES IN PART** the defendants' motion for summary judgment(Doc. 168) as follows:

(1) Count 1 is **DISMISSED** without prejudice for failure to exhaust;

(2) Count 3 is **DISMISSED** without prejudice for failure to exhaust;

(3) Summary judgment on Count 5 is **DENIED** with respect to Defendant Anderson;

(4) The portion of Count 8 alleging that Smithson, Bernard, Dallas and Siepp destroyed legal documents is **DISMISSED** without prejudice for failure to exhaust;

(5) The portion of Count 8 alleging that Mote, Hile and Walker retaliated by refusing to respond to grievances is **DISMISSED** without prejudice for failure to exhaust;

(6) The portion of Count 8 alleging that Smithson, Anderson and Starkey were retaliating when they used excessive force as alleged in Count 3 is **DISMISSED** without prejudice for failure to exhaust;

(7) Summary judgment is **DENIED** on the remaining parts of Count 8 with respect to Defendants Smithson, Bernard, Dallas and Siepp;

(8) Defendants Mote, Hile, Walker and Mitchell are **DISMISSED** from the case;

(9) As a sanction, the balance of the case is **DISMISSED** without prejudice and with leave to reinstate as indicated above.

In the event the case is reinstated, only the following claims remain for trial:

(1) Count 5;

(2) The portion of Count 8 claiming that Smithson, Bernard, Dallas and Siepp tore apart Santiago's cell and harshly cuffed him on August 26, 2004, in retaliation for exercising rights under the First Amendment; and

(3) The portion of Count 8 claiming that Anderson subjected Santiago to cruel and unusual conditions of confinement on September 5, 2003, in retaliation for exercising rights under the First Amendment.

The Clerk of Court shall have the record reflect that this case is closed. Final judgment shall not enter at this time. Rather, at the close of the 30-day period allotted to plaintiff Santiago to disavow his prior invectives, the Court will further direct the Clerk regarding entry of final judgment.

**IT IS SO ORDERED.**

**DATED March 22, 2010.**

s/ Michael J. Reagan
**MICHAEL J. REAGAN**
**United States District Judge**

13